SALLEE BROS. *v.* THOMPSON.

4-7637                    187 S. W. 2d 956

Opinion delivered May 14, 1945.

*Donham, Fulk & Mehaffy* and *Leffel Gentry,* for appellant.

*N. J. Henley,* for appellee.

HOLT, J. This appeal comes from a judgment of the Searcy Circuit Court affirming an award of compensa-

tion to appellee, Javan S. Thompson, to compensate an injury sustained by him while in the employ of appellants, Sallee Bros.

The essential facts appear not to be in dispute.

Appellee, on January 11, 1943, while working for appellants, Sallee Bros., as foreman of its lumber mill at Leslie, Arkansas, sustained an injury to his back while assisting a laborer employed by appellants in removing the bed from a wagon, which resulted in a 75% permanent partial disability. His average weekly wage at the time of the injury was $25, and following his injury for a period of eleven weeks and four days, to October 10, 1943, appellants paid appellee, claimant, compensation at the rate of $16.25 per week for temporary total disability. Thereafter, for an additional 18 weeks, appellants paid claimant compensation at the rate of $16.25 per week.

Thereafter, (quoting from appellants' brief) "on December 9, 1943, appellee and the Consolidated Underwriters, insurance carrier for the appellant, entered into a joint stipulation wherein it was agreed that appellee's claim would be settled, once and for all, by the payment of an additional $292.50 to him by the appellant and this joint stipulation, together with appellee's petition for lump sum settlement, was forwarded to the Workmen's Compensation Commission at Little Rock, with the request of both parties thereto that said joint stipulation be approved, and award be issued authorizing the payment of such amount. Upon receipt of this joint stipulation, the Commission notified both parties that it would not approve any settlement until a hearing was had before it to determine claimant's physical condition."

The Commission then set April 21, 1944, for a hearing on the petition, *supra*.

On January 13, 1944, appellee accepted $292.50 in full payment of his claim against appellants and executed a release discharging them from further liability. Subsequent to the execution of this release, appellee has been

employed in Missouri at $35 per week by another company, and the nature of this work is explained by appellee as follows: "After I was released there I went to buying timber, which is very light duty. The company I work for don't have me to do any walking. Don't get in the woods and hustle timber. I stay on the yard and buy timber and oversee their mill."

Thereafter, on the day appointed, there was a hearing before the Commission, and at its conclusion, the Commission made the following findings of fact: "1. That the claimant has a permanent partial disability to his body as a whole as a result of the injury sustained on January 11, 1943. 2. That the claimant's permanent partial disability to the body as a whole, caused by the injury on January 11, 1943, has resulted in a decrease in the claimant's earning capacity."

In its "Conclusions of Law," the Commission said: "The release signed by the claimant on January 13, 1944, is void and cannot operate to relieve the respondents from liability for additional compensation. See § 20, Workmen's Compensation Law. According to the claimant, he suffered an injury to his back while performing his duties as an employee of the respondent employer, and the record shows that subsequently the respondent accepted liability for the injury, hospitalized the claimant, furnished medical treatment and paid the claimant a total of $480.53 in compensation. Dr. Newman, who examined the claimant as a special medical examiner for the Commission, is of the opinion that the claimant has a 75 per centum permanent partial disability as a result of the injury sustained on January 11, 1943, and he recommends an operation, which he believes will reduce the extent of disability to approximately 10 per centum. This operation has been tendered by the respondents and refused by the claimant.

"It is well settled that the Commission has no authority to require the claimant to submit to an operation of a serious nature.

"Under § 13(c) (23) of the Workmen's Compensation Law, a permanent partial disability of the body as

a whole is compensated on a basis of 65 per centum of the difference between the claimant's earning capacity prior to the injury and subsequent thereto. Earning capacity under this section of the law does not mean wages received, but means the claimant's ability to earn wages on the open labor market. Thus a claimant is entitled to be compensated for a permanent partial disability to his body as a whole, even though he may be employed at a higher wage following the injury than before the injury, if he can show that as a result of the injury he is forced to compete on the open labor market as a handicapped worker.

"The claimant is a skilled worker in the handle industry. His experience enables him to perform duties in a supervisory capacity and to obtain employment not open to the average worker. His most recent employment has been that of a timber buyer at a weekly wage in excess of his wage at the time of the injury. However, in view of the medical evidence, as well as the claimant's testimony, there is no doubt but that he is handicapped in seeking employment as a result of the disability caused by the injury sustained. The effect of this disability upon the claimant's earning capacity must be fixed in the light of all the circumstances. In our opinion it is reasonable to conclude that the difference between the claimant's earning capacity prior to the injury and subsequent thereto is not more than $10 per week, and since 65 per centum of this amount is less than $7 per week, the claimant is entitled to compensation at the minimum rate of $7 per week. Compensation for disability cannot exceed a period of 450 weeks and inasmuch as the respondents have heretofore paid the claimant compensation for 29 and 4/7 weeks, they are entitled to a credit for this period in computing the period for which compensation is payable for permanent partial disability. The Commission, therefore, directs that there issue the following AWARD. The respondents will pay the claimant compensation at the rate of $7 per week, beginning with February 1, 1944, and continuing for a period not to exceed 420 and 3/7 weeks.''

For reversal here, appellants first contend that the settlement and release entered into by the parties was binding on appellee and, therefore, the Commission was without authority to make the award.

It appears that the Commission found that "the release signed by the claimant on January 13, 1944, is void and cannot operate to relieve the respondents from liability for additional compensation. See § 20, Workmen's Compensation Law." The section to which the Commission refers is as follows: "§ 20.—Waiver of Compensation.—(a) No agreement by an employee to waive his right to compensation under this Act shall be valid, and no contract, regulation, or device whatsoever shall operate to relieve the employer or insurance carrier, in whole or in part, from any liability created by this Act, except as herein provided."

Appellants argue that the Commission's interpretation of this section, and the trial court's affirmance thereof, are erroneous for the reason, (so they say in their brief) it "has reference solely to agreements or contracts entered into prior to an injury, or prior to employment. It has no reference at all to an agreement, such as the one executed by appellee in this case, executed after the injury."

We cannot accept the narrow and limited construction placed upon this section by appellants. We find no provision in the Act limiting and restricting the meaning of § 20, as contended by appellants. Had the Legislature intended such an interpretation, it could very easily have said so. It is our view, and we so hold, that the above § 20 providing that "no agreement by an employee to waive his right to compensation under this Act shall be valid," has reference not only to agreements made prior to the injury but subsequent thereto.

We have many times held that this Compensation Act should be liberally construed to effectuate its purpose. In the recent case of *Williams Manufacturing Company v. Walker*, 206 Ark. 392, 175 S. W. 2d 380, we held: (Headnote 8) "Workmen's Compensation—Statutory

Construction.—Workmen's Compensation Acts are entitled to receive a liberal construction and the humanitarian objects of such laws should not, in the administration thereof, be defeated by putting form above substance,'' and in *Hunter* v. *Summerville,* 205 Ark. 463, 169 S. W. 2d 579, we said: ''In construing the Workmen's Compensation Law, this court, in the case of *Lundell* v. *Walker,* 204 Ark. 871, 165 S. W. 2d 600, did not lay down any general rule, but the decision in that case evidenced a liberal interpretation of the act for the benefit of those whom it was intended to protect.'' Section 24 of the Act provides: ''In any proceeding for the enforcement of a claim for compensation under this Act, there shall be a *prima facie* presumption, (1) that the claim comes within the provisions of this Act,'' and in 71 C. J., p. 793, § 517.1, the text writer on ''Workmen's Compensation Acts'' announces the general rule to be that ''the statutes are to be construed liberally for the protection of the employee.''

Here the employer and employee submitted their joint petition to the Workmen's Compensation Commission, asking for its approval of their agreement for a final settlement of appellee's claim to further compensation by a lump sum cash payment to appellee. By so doing, the parties brought themselves within the provisions of § 25(e) of the Workmen's Compensation Act, which is, in part, as follows: ''(e) Joint Petition. Upon petition filed by the employer or insurance carrier, and the injured employee, the Commission shall require (acquire) jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition. The Commission is authorized and empowered to have a full hearing on the petition, and to take testimony of physicians and others relating to the permanency or probable permanency of the injury, and to take such other testimony relevant to the subject-matter of such petition as the Commission may require.'' The Commission, therefore, acted with authority in considering and acting upon the joint petition.

We hold, therefore, that, in the circumstances here, the Commission had the authority under the Act to hear and determine appellee's claim for compensation and in connection therewith to disregard said agreement and release.

Appellants next argue that "the evidence was not sufficient to establish any loss of earning power on the part of claimant," and, therefore, he was not entitled to an award of compensation.

The evidence is undisputed that at the time appellee received his injury his average weekly wages amounted to $25 per week, as foreman of appellants' mill, and that at the time the Commission awarded him compensation at the rate of $7 per week for a period not to exceed 420 and 3/7 weeks, beginning February 1, 1944, he was earning $35 per week or $10 more than at the time of his injury, and was also employed as a foreman of a mill for a company in Missouri, but his work in this latter employment was of a somewhat lighter nature, which did not require as much physical exertion as that required in his employment at the time of his injury.

The section of the Act on which the Commission based its award of compensation to appellee is: "§ 13(c). Permanent Partial Disability: . . . (23) Other Cases: In all other cases in this class of disability there shall be paid to the injured employee 65% of the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon application of any party in interest, and in no case exceeding a longer period than four hundred fifty (450) weeks, or a maximum of $7,000."

It thus appears by the plain provisions of the Act that the injured employee was entitled to 65% of the difference between his average weekly wage, in the instant case $25 per week, and his wage earning capacity thereafter "in the same employment or otherwise."

which in the instant case was shown to be $35 per week, so he was actually earning more after the injury than before.

The Commission, in these circumstances, concluded as a matter of law that "a claimant is entitled to be compensated for a permanent partial disability to his body as a whole, even though he may be employed at a higher wage following the injury than before the injury, if he can show that as a result of the injury he is forced to compete on the open labor market as a handicapped worker," and granted the award, *supra.*

We have reached the conclusion, on the record here, that the Commission erred in its construction of the Act, *supra,* and in making the award of compensation, and that the trial court erred in its affirmance of this award. We have held that the Workmen's Compensation Act, Act 319 of 1939, "does not call for general accident insurance." *Birchett* v. *Tuf-Nut Garment Manufacturing Company,* 205 Ark. 483, 169 S. W. 2d 574, (Headnote 2). Its purpose is to protect the worker, or employee, against reduced or lost earning power and when it is shown, as here, that the employee is earning higher wages "in the same employment or otherwise," after his injury than before, we think it was not intended by the Act that during such period he should receive the proceeds of compensation awarded. Should, however, it be made to appear by appellee, by proper proceedings before the Commission, at any time within the period of 420 and 3/7 weeks, subsequent to February 1, 1944, that his wage earning capacity, on account of his injury, has fallen below his average weekly wages at the time of his injury, then he would be entitled to a reopening of his case and for such award as, under the Act, the facts would justify.

In Horovitz on Workmen's Compensation, p. 275, the textwriter says: "For a time in Wisconsin and Michigan inability to work in the former employment alone was the test, so that an employee could obtain compensation even if he were earning more wages in another employment. The currently used standard and a fairer

one, is his earning capacity in the same or other employment." In support of the text, there is cited *Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522, 130 N. E. 634, and there the court held: (Headnote 2) "2. Compensation, if due at all, is to be measured by a prescribed percentage of 'the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise,' . . . where it appears from the record that claimant was offered work that he could do, paying the same wages that he received before the accident, but that he refused it, in the absence of a denial or explanation, there is no basis for an award for disability during the period that such work might have been obtained."

It will be noted that the above quoted section of the New York Act is identical with our own, *supra*. The principle announced there applies with equal force here.

For the error indicated the judgment is reversed and the cause remanded with directions to the trial court to set aside its judgment, and remand the cause to the Commission with directions to proceed in a manner not inconsistent with this opinion.