LION OIL COMPANY *v.* REEVES.

4-9756 254 S. W. 2d 450

Opinion delivered April 21, 1952.

*Davis & Allen,* for appellant.

*Shackleford & Shackleford* and *S. Hubert Mayes,* for appellee.

GRIFFIN SMITH, Chief Justice. R. L. Reeves, who for many years had been a Lion Oil Company employe, was injured February 11, 1949. His claim for permanent partial impairment of the left hand to the extent of 75% was admittedly compensable under the Workmen's Compensation Law. The appeal does not involve Reeves' right to payment during the healing period terminating January 9, 1950, while he was unemployed.

It is agreed that Reeves' weekly wage when he became incapacitated, computed under the formula supplied by the compensation law, was $56.80; hence the disabled worker was entitled to the maximum allowable of $25 per week, Ark. Stat's, § 81-1310(a).

But Lion Oil Company's policy was to pay its employes during temporary disability of the kind involved, and the amount so paid is measured by the wage or salary existing when the misfortune occurs, plus any increase applicable to the group of employes to which the particular worker belongs.

A class increase granted during Reeves' period of disability raised his weekly income from $56.80 to $70.13. The healing period continued for 47 2/7 weeks. During that time Reeves was paid an average of $60.22 per week, $35.22 of which was in the nature of a courtesy grant: that is, it exceeded the compensation requirement of $25 by the sum mentioned. This excess payment of $35.22, multiplied by the weeks and the fraction taken for healing, amounted to $1,665.06.

The Commission found that under § 13(c) of Initiated Act No. 4 of 1948, Ark. Stat's, § 81-1313, the employe should be paid for a specific injury, and that such payments must continue after healing until a maximum of 150 weeks had been accounted for. However, since the degree of impairment was but 75%, the top allowable of $25 per week would be three-fourths of 150 weeks (112½) multiplied by the monetary factor, or $2,812.50. These figures would not be disputed if the Commission's construction is correct. The oil company does not contend that additional payments may not become due at a later date. On the contrary it takes the position that, because Reeves' income during the healing period and at all times since has been greater than any weekly sum legally allowable by the Commission, nothing more in the nature of compensation can be awarded until the claimant's wages fall below $25 per week. *Sallee Brothers* v. *Thompson*, 208 Ark. 727, 187 S. W. 2d 956; *Conatser* v. *D. W. Hoskins Truck Service*, 210 Ark. 141, 194 S. W. 2d 680.

In addition to its finding that the specific injury was compensable *per se*, the Commission concluded that when the oil company made the supplementary weekly payments of $35.22 a gratuity was intended; but, regardless of what the motivation was, this total of $1,665.06 could not be allowed as partial offset against the award of $2,812.50.

On appeal to circuit court the Commission's finding that the injury was compensable specifically was upheld, but its refusal to permit the oil company to take credit for the $35.22 paid weekly as supplement during the healing period was reversed.

In the Sallee Bros.-Thompson case the Commission ruled that a claimant was entitled to compensation upon a showing that he had sustained a permanent partial disability to his body as a whole, even though the worker may be employed at a higher wage than was paid before the injury, "if he can show that as a result of the injury he is forced to compete in the open labor market as a handicapped worker." This Court reversed, but in doing so we were construing the Act of 1939.

Section 81-1313(c-23), considered in the Sallee appeal, referred to "all other cases"—being those cases not enumerated in the preceding subsections. This non-specified class of disability was compensable at 65% of the difference between the worker's average weekly wage "and his earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability," etc.

In the Initiated Act "other cases" are treated in § 81-1313(d) and the language is: "A permanent partial disability not scheduled in subsection (c) hereof shall be apportioned to the body as a whole, which shall have a value of 450 weeks, and there shall be paid compensation to the injured employe for the proportionate loss of use of the body as a whole resulting from the injury." The words, "and his earning capacity thereafter in the same employment or otherwise" have not been brought forward in the new measure.

Divisions (21) and (22) of subsection (c) treat total loss of use of enumerated parts of the body, and (22) deals with partial loss or partial loss of use. For permanent partial impairment of a member, the compensation provided is for the "proportionate loss or loss of use of the member."

In view of the change in language found in the Initiated Act, and in obedience to the universal policy of courts to construe compensation measures in a manner reasonably calculated to effectuate the legislative intent (or, as in the case of an initiated amendment, to carry out the presumptive intention of those who framed the measure and the people who adopted it), we are unable to say that the Commission was in error when it determined that payment for permanent partial disability in the circumstances of this case was not the plan, and that compensation must be made whether the subject is employed or unemployed, and this is true irrespective of what his wages may be. The Circuit Court correctly affirmed this phase of the appeal.

We have not overlooked appellant's contention that the new law, subdivision (e) of § 81-1302, defines disability as "incapacity because of injury to earn, in the same or any other employment, the wages which the employe was receiving at the time of the injury." It is quite likely that when the initiated measure was written its framers had in mind the Commission's expression that a worker who had sustained partial permanent disability "was forced to compete in the open market as a handicapped worker." In any event the amendment should be considered as a whole.

On the second issue we agree with the Circuit Court in its holding that payments by the oil company in excess of $25 per week should in the circumstances of this case, be credited against the full award.

Section 81-1319(m) is: "If the employer has made advance payments of compensation he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due. If the injured employee shall receive full wages during disability he shall not be entitled to compensation during such period." The old Act § 81-1319(k), begins like the current measure, but the second sentence reads: "If the injured employe receives wages during disability, the amount of such wages shall be deducted," etc. Difference is that the Act of 1939 said

"wages," while the current measure speaks of "full wages." Otherwise the two provisions are in effect the same.

Reeves' attorneys maintain that the supplemental weekly payments, being $25 short of "full wages," could in no sense come within the protection of subdivision (*m*) —this for the reason that the added sums of $35.22 were not advance payments on compensation; (2) the claimant was entitled to statutory benefits during the healing period because full wages were not being paid.

No controversy involving this carefully argued distinction has been before us and construction is necessarily a matter of first impression.

Lion Oil Company is a self-insurer. Its policy to pay an injured employe the prevailing wage scale while inactive during a healing period is in line with modern conceptions of employer-employe relationships. A corporation that is shown to have pioneered or willingly adopted this practice should be commended and encouraged rather than penalized.

This is the first case construing the initiated measure in a way permitting specific compensation to workers who have suffered permanent partial disability, and holding that earning capacity equal to or in excess of statutory payments does not suspend the employer's obligation to pay. Perhaps the oil company could have protected itself within the letter of the law by paying full wages and allowing compulsory compensation to await Commission determination. But seemingly neither party had in mind the peculiar words of the statute. The transaction was being dealt with in a practical, common sense manner. Our feeling is that in the absence of judicial construction the mutual interests of Reeves and Lion Oil Company were being satisfactorily served when payments aggregating "full wages" were made, and that neither party at that time had the slightest idea any advantage would be asserted. It is highly improbable that Reeves thought the excess payments he received were gratuities, and certainly the oil company was endeavoring to provide for the worker's current needs.

The judgment of the Circuit Court is affirmed.

Mr. Justice McFADDIN, Mr. Justice MILLWEE, and Mr. Justice GEORGE ROSE SMITH agree to that part of the opinion holding that the claimant was entitled to compensation for a specific permanent partial disability, but they dissent from the finding that credit should be allowed Lion Oil Company for the excess payments, their position being that the Commission correctly held that these were gratuities.