DOCKERY *v.* THOMAS.

5-1708                                              320 S. W. 2d 257

Opinion delivered January 19, 1959.

[Rehearing denied February 23, 1959.]

*J. B. Reed,* for appellant.

*Talley & Owen & James R. Howard,* for appellee.

JIM JOHNSON, Associate Justice.   The question[1] to be decided is, whether compensation benefits should be paid to an employee receiving a compensable injury but whose earning capacity is not diminished by the injury.   Following the opinion of this Court in *Dockery* v. *Thomas,* 226 Ark. 946, 295 S. W. 2d 319, the Arkansas Workmen's Compensation Commission awarded benefits to William Earl Thomas.

The temporary total disability was found by the Commission to be from May 4, 1954, through June 29, 1955, and the permanent partial disability was found to be 30% to the body as a whole.   Under the award, Thomas was to receive $25.00 per week for the tempo-

---

[1] It was argued in the brief of appellant that all the unpaid Workmen's Compensation benefits awarded Mr. Thomas abated by reason of his death. But in the oral argument the appellant's counsel — with becoming candor—called attention to § 81-1323(e) Cumulative Pocket Supplement of Ark. Stats., which is Paragraph 23 of Initiated Act No. 4 of 1949, and which settles the said point argued in the brief.

rary total disability, or a total, minus credits, of $1,-472.14; for the permanent partial disability, the award was for $25.00 per week for 135 weeks or $3,375.00, plus hospital, medical, medical appliance bills, and the maximum attorney's fee allowable. Thomas died on August 27, 1957, from causes entirely disconnected with this case. On appeal by Dockery, the Pulaski Circuit Court authorized Thomas' widow to revive the action. The Circuit Court modified the Commission's award by cancelling all of the permanent partial award after August 27, 1957, the date of Thomas' death; and appellee does not complain of such modification. Appellant insists, here, that Thomas was not entitled to any award for permanent partial disability.

The evidence reflects that Thomas, during the years following his injury, received substantially the same earnings as before his injury; and it is thus argued that permanent partial disability benefits should be denied. The appellant calls to our attention the cases of *Conatser* v. *D. W. Hoskins Truck Service, et al.,* 210 Ark. 141, 194 S. W. 2d 680, and *Sallee Bros.* v. *Thompson,* 208 Ark. 727, 187 S. W. 2d 956. It was decided in those cases that an employee was precluded from an award of permanent partial disability when his earnings after the injury were as great as his earnings prior to the injury. But those cases were decided in 1946 and 1945 respectively, and were governed by Act 319 of 1939, § 13 (Ark. Stats. (1947) § 81-1313 (C) (23)), which provides:

"OTHER CASES: In all other cases in this class of disability there shall be paid to the injured employee 65% of the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon application of any party in interest, and in no case exceeding a longer period than four hundred fifty (450) weeks, or a maximum of $7,000."

That Section of the 1939 Workmen's Compensation Act was superseded by Initiated Measure (1949) No. 4, § 13, (Ark. Stats. (1948) § 81-1313 (d)), which provides:

"OTHER CASES: A permanent partial disability not scheduled in sub-section (c) hereof shall be apportioned to the body as a whole, which shall have a value of 450 weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury."

A comparison of the above quoted sections of the Workmen's Compensation Acts reflects that the words of the 1948 act omit the reference to the employee's *wage earning capacity* after the injury, and instead, provide that the employee shall be paid compensation for the *"proportionate loss of use of the body as a whole resulting from the injury."*

In the case of *Lion Oil Co.* v. *Reeves,* 221 Ark. 5, 254 S. W. 2d 450, decided in 1952, we allowed a recovery even though the employee was receiving more money *after* his injury than he had received *before* his injury. We pointed out the difference between the 1939 law and the 1948 Initiated Measure, and explained that the cases of *Conatser* v. *Hoskins, supra,* and *Sallee* v. *Thompson, supra,* were decided under the 1939 law. In *Lion Oil Co.* v. *Reeves, supra,* we said:

"In view of the change in language found in the Initiated Act, and in obedience to the universal policy of courts to construe compensation measures in a manner reasonably calculated to effectuate the legislative intent (or, as in the case of an initiated amendment, to carry out the presumptive intention of those who framed the measure and the people who adopted it), we are unable to say that the Commission was in error when it determined that payment for permanent partial disability in the circumstances of this case was not the plan, and that compensation must be made whether the subject is employed or unemployed, and this is true irrespective of what his wages may be."

The holding in *Lion Oil Co.* v. *Reeves*[2] is compelling here. The Commission found that Thomas had suffered a permanent partial disability of 30% to the body as a whole. What he might have earned for a short period of time after his injury does not prove that the Commission was in error in fixing the injury to his body as a whole.

The judgment of the Circuit Court is in all things affirmed.

SMITH, J., concurs.

HARRIS, C. J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. I respectfully dissent to the ruling of the majority for the reason that the proof reflects that the deceased received substantially the same earnings after his injury as before the injury, and it is accordingly my opinion that permanent partial disability benefits should be denied.[3] The majority concede that this was formerly the law, as previously determined by the cases cited in the majority opinion, but state that Initiated Measure (1948) § 4 changed the law to permit recovery for permanent partial disability even though the injured employee was gainfully employed after the injury, and receiving more than his former wages. The opinion cites sub-section (d) of § 81-1313, but makes no mention of sub-section (h), which provides as follows:

"If any injured employee refuses employment suitable to his capacity offered to or procured for him, he shall not be entitled to any compensation during the continuance of such refusal, unless in the opinion of the Commission, such refusal is justifiable."

---

[2] In Larson on Workmen's Compensation Law, Vol. 2 § 57.21, cases from more than a score of jurisdictions are cited to sustain this textual statement: "It is uniformly held, therefore, without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of actual post-injury earnings equalling or exceeding those received before the accident.

[3] It might also be pointed out that a large part of such earnings were received from identically the same occupation that Thomas had previously been engaged in.

I can see no reason to deny compensation to an injured employee simply because he refuses employment, if he is entitled to compensation whether employed or not. In other words, it would appear, under the majority opinion, that he can work and earn more wages than before his injury, and still draw compensation for permanent partial disability, but, on the other hand, if, while receiving permanent partial disability payments, he is offered a job which he can handle, and refuses such employment, compensation under the statute, would cease. This, to me, is totally inconsistent, and leads me to the conclusion that the intent, as expressed in the Act, is still to deny compensation where the employee is gainfully employed and making as much or more money than previously. Also, sub-section (m) of § 81-1319, provides as follows:

"If the employer has made advance payments of compensation he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due. If the injured employee receives full wages during disability he shall not be entitled to compensation during such period."

While I agree that this sub-section has primary reference to wages paid by the original employer, I see no particular distinction in receiving the wages from that employer or a second employer. In each instance, the employee has suffered no loss in remuneration. This sub-section, read together with sub-section (h) (heretofore referred to), strengthens my conclusion that the people, in passing our Workmen's Compensation Act, did not contemplate or intend that an employee should draw compensation for permanent partial disability when his earnings, after the accident, were equal to, or greater than, earnings before the accident. In my opinion, the purpose of paying compensation to an injured employee (except for those injuries which might be classed as scheduled claims, such as loss of a hand, foot, etc.), is to prevent financial hardship during that period when he is unable to engage in his normal occupation, or maintain normal earnings.

For the reasons herein enumerated, I would reverse the judgment.