WILSON & CO., INC. *v.* John CHRISTMAN

5-4472                          424 S. W. 2d 863

Opinion delivered February 19, 1968
[Rehearing denied April 1, 1968.]

*Crouch, Blair & Cypert,* for appellant.

*Lewis E. Epley,* for appellee.

J. Fred Jones, Justice. This is a workmen's compensation case involving a back injury. The respondent accepted responsibility for a 27% permanent partial disability to the body as a whole based on medical evidence,

but controverted any percentage in excess of that amount. The referee, and the full Commission on review, awarded compensation for a 60% permanent partial disability and this award was affirmed by the circuit court on appeal. The respondent has appealed to this court and relies upon the following point for reversal:

"The court erred in affirming the order and award of the Arkansas Workmen's Compensation Commission for the reason that there was not substantial competent evidence in the record upon which to base such order and award."

Ark. Stat. Ann. § 81-1310 (a) (Repl. 1960) provides:

"* * * Compensation payable to an injured employee for disability shall not exceed sixty-five per centum (65%) of his average weekly wage at the time of the accident, and shall not be greater than thirty-five dollars ($35.00) per week, nor less than seven dollars ($7.00) per week, and shall be paid for a period not to exceed 450 weeks of disability, and in no case shall exceed twelve thousand five hundred dollars ($12,500.00), in addition to the benefits and allowances under section 11 [§ 81-1311] hereof. The minimum and maximum limitations of time and money expressed in the foregoing sentence shall apply in all cases pertaining to the payment of money compensation on account of disability."

Ark. Stat. Ann. § 81-1302 (e) (Repl. 1960) defines disability as follows:

" 'Disability' means incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury."

Ark. Stat. Ann. § 81-1313 (c) (Repl. 1960) provides for scheduled injuries as follows:

"An employee who sustains a permanent injury scheduled in this subsection shall receive, in addition to compensation for the healing period, sixty-five per centum [65%] of his average weekly wage for that period of time set out in the following schedule:

(1) Arm amputated at the elbow, or between the elbow and shoulder, two hundred [200] weeks; [This subsection then enumerates a total of 20 scheduled specific losses and sets out their value in weeks.]

\* \* \*

(21) Total loss of use: Compensation for permanent total loss of use of a member shall be the same as for amputation of the member.

(22) Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member shall be for the proportionate loss or loss of use of the member.

(d) *Other cases*: A permanent partial disability *not scheduled in subsection (c) hereof shall be apportioned to the body as a whole,* which shall have a value of 450 weeks, *and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole* resulting from the injury." (Emphasis supplied.)

Thus, it is seen that we actually have two types of disability, or two criteria, for measuring compensable disability, set out in our workmen's compensation statute. Disability under the *definition section,* § 81-1302 (e), supra, is measured by "incapacity because of injury to earn" and loss of wages is a prime factor. The disability referred to under the *scheduled injury section,* § 81-1313 (c), supra, is measured in number of weeks of compensation and partial loss of the use of the body as a whole is the prime factor under § 81-1313 (d).

Thus, an injured employee who suffers a permanent partial loss of the use of his body is entitled to payment of compensation for the number of weeks the percentage of such loss bears to 450 weeks. This loss of use may consist of physical functional loss only, and its duration and extent may best be measured through physical examination by competent medical specialists. This permanent partial loss of use to the body may or may not also result in incapacity to earn the same wages received at the time of injury. An accidental injury under this subsection may result in a permanent partial disability consisting only of a partial loss of use of the body as a whole and with no change in earning capacity at all. An injured employee is entitled to the payment of compensation, however, for *this loss of use* whether his earning capacity is diminished by the injury or not. *Dockery* v. *Thomas*, 229 Ark. 984, 320 S. W. 2d 257. Where the permanent partial disability consists also of an incapacity, because of the injury to earn wages as defined and set out in § 81-1302 (e), supra, such disability includes, blends in with, and is usually greater than the disability occasioned by loss of functional use only.

The case of *Glass* v. *Edens*, 233 Ark. 786, 346 S. W. 2d 685, was a compensable heart case involving permanent partial disability *including incapacity to earn wages*. The maximum medical rating of disability, apparently based on functional loss of use to the body as a whole, amounted to 40%. The referee, in awarding compensation for a permanent partial disability of 40% to the body as a whole, failed to distinguish the two methods of measuring disability, as evidenced in his opinion, stated as follows:

" 'In the case of *Jesse A. DeBin* v. *Kaiser Engineers,* reported Vol. 214, page 3 of the Opinions of the Full Commission, the Commission held that evidence other than clinical findings cannot be considered to arrive at a rating for permanent partial

disability. I must therefore only consider the medical rating of disability.' "

The award of the referee in the *Glass* case was sustained by the Commission and affirmed by the circuit court. The judgment of the trial court was reversed on appeal, and after quoting from Larson on Workmen's Compensation Law, § 57.10, this court said:

"The maximum medical rating of disability in this case was 40%, which was allowed by the referee and affirmed by the Full Commission. Apparently, they also considered only medical evidence and this we consider error. Under the rules as set out in Larson, consideration should have been given, along with the medical evidence, to the appellant's age, education, experience, and other matters affecting wage loss."

An excellent and pointed article analyzing *Glass* v. *Edens,* as distinguished from, and compared with, cases from other jurisdictions, is found in Arkansas Law Review, Vol. 18, p. 269. As recognized in this article, the rule laid down in the *Glass* decision is that the proper determination of the extent of permanent partial disability is reached through a balancing of wage loss disability (where wage loss is involved) with physical, functional disability.

The rule laid down in the *Glass* case was affirmed and clarified to some extent in the case of *Mann* v. *Potlatch Forests,* 237 Ark. 8, 371 S. W. 2d 9, wherein the claimant had been awarded compensation for a permanent partial disability of 25% to the body as a whole because of a back injury. He later claimed a greater disability contending that the *doctors* had not considered his age, occupation, etc. as they should have done in arriving at their estimate of his permanent partial disabilty, and as was required that they should do by the decision in the *Glass* case. In affirming the Commission in the *Mann* case, this court reaffirmed the holding in the *Glass* case, that consideration should be given, along

with medical evidence, to the appellant's age, education, experience, and other matters affecting wage loss. The case was affirmed, however, on the ground that the Commission *did* take these elements into consideration. In the *Mann* case, this court further clarified the *Glass* opinion in these words:

> "The *Glass* opinion places the duty on the *Commission*, and not the *doctor*, to consider the elements mentioned above. In the cited case we said: 'Apparently, they also considered only medical evidence and this we consider error.' The word "they" obviously refers to the Commissioners and not the doctors. In the next place, appellant is in no position to contend the Commission failed to take into consideration his age, occupation, etc. The record shows that the Commission was made aware of our holding in the *Glass* case, and we cannot say it did not follow that holding here in arriving at appellant's disability."

The workmen's compensation Commission is charged with the duty and the full responsibility of deciding *all claims for disability* falling under its jurisdiction, and although its decisions are based on competent evidence, it is not limited, and never has been limited, to *medical evidence only* in arriving at its decision as to the amount or extent of permanent partial disability suffered by an injured employee as a result of injury. The Commission should consider *all competent evidence,* and where the claim is for permanent partial disability based on *incapacity to earn,* the Commission should consider all competent evidence relating to such incapacity, including the age, education, experience, and other matters affecting the claimant's incapacity to earn the same wages he was receiving at the time of his injury. The Commission should form its opinion and base its award on the preponderance of all the competent evidence, including medical, as well as lay testimony, and also including the testimony of the claimant himself. The Com-

mission weighs all of the evidence as a jury would do and we affirm the order or award of the Commission on appeal unless the Commission acted without, or in excess of its powers; unless the order or award was procured by fraud; unless the facts found by the Commission do not support the order or award; or unless there was not sufficient competent evidence in the record to warrant the making of the order or award. [Ark. Stat. Ann. § 81-1325 (b) (Repl. 1960).] We have many times held that the findings of fact made by the Commission are entitled to the same force and effect as a jury verdict, and will not be disturbed on appeal if supported by substantial evidence. (*Hollifield* v. *Bird & Son, Inc.*, 227 Ark. 703, 301 S. W. 2d 27.)

Turning now to the case at bar, the appellee was 24 years of age when he was injured. He had an eighth grade education and quit school to help support his mother and brothers and sisters when he was sixteen years of age. He was married at the time of his injury, and has two children of his own. Appellee was more or less an itinerant worker. He changed jobs rather frequently, but seemed to lose little time between jobs. All the jobs appellee ever did, or knew how to do, consisted of heavy manual labor, ranging from cutting and carrying mining posts in Pennsylvania, to dipping chicken off-fall from a vat with a bucket in Fayetteville, where he was injured. The appellant agrees with our holding in *Glass* v. *Edens, supra,* but argues that the appellee in the case at bar has failed to prove that he has a permanent partial disability in the magnitude of 60%.

Appellee underwent an operation for the removal of a herniated intervertebral disc. He testified at the hearing that he was in constant pain and had been since his injury. Two of his former employers testified that they could not re-employ him because of incapacity to work as reflected by the medical reports in evidence.

Dr. Tom P. Cocker on May 10, 1966, reported as follows:

"I do not believe that there is likelihood of further improvement as far as the back is concerned although the patient should continue on exercises in that hope.

"I do not think that he will be able to return to manual type work or anything that requires repeated bending, stooping, lifting or prolonged standing or walking. It is my opinion that the patient has a permanent partial disability to his body as a whole of 25%."

On June 8, 1966, Dr. William G. Lockhart, a neurosurgeon of the Holt-Krock Clinic in Fort Smith who performed the surgery on appellee, reported as follows:

"As stated in previous correspondence, I feel that we cannot, on any means, classify this boy with anything but a poor result from surgery.

"Once we get through the emotional and psychogenic overlay here, I think that we would be justified in suggesting a permanent partial disability of the body as a whole of 25% to 30%.

"I do not feel that this boy is going to be able to go back to an employment that he has enjoyed before such as manual exertions of lifting or bending over postures.

"I do believe that he is employable in such work as bench work, in which he might be re-trained in. If he was able to get back into an employable situation, regardless of its nature, I am sure that this would help reduce some of his anxiety and emotional overlay."

On July 1, 1966, Dr. Stanley Applegate reported as follows:

"I have seen Mr. Christman this week and believe that he has 25% permanent disability due to his back

trouble and have recommended that he settle as soon as possible and get into Vocational Rehabilitation and learn a trade where he will not have to use his back so much as he was doing common labor at Wilson and Co."

All that appellee had ever done, or knew how to do, required stooping, bending and lifting. There is evidence in the record that appellee suffered poor eyesight as an additional handicap to some types of employment. The importance of appellee's educational background and experience in evaluating his disability in connection with his incapacity to earn because of his injury, is pointed up in Dr. Lockhart's earlier report of July 1, 1966, wherein he said:

"Several days ago, 6/20/66, he appeared in my office accompanied by his wife stating that he had total paralysis of the right lower extremity that had come on spontaneously.

"* * * It was obvious, when he was examined in the office, that we were dealing with either a hysterical paralysis or malingering.

\* \* \*

"I feel that I have done as much as I can do with this man at the present time. They seemingly do not wish to accept the fact that this could be a hysterical problem and certainly his wife does not even like to consider the fact that there may be a question of malingering here also. It is obvious that we are not dealing with that degree of physical disease at the present time that would cause the magnitude of problems, or for that matter what physical disease is present is so far over-shadowed by these other factors that it is impossible to treat this man intelligently without thorough psychiatric evaluation and treatment."

It goes without saying, and without the necessity for citation of cases, that true malingering is not a form of disability of any sort. It is a form of ability rather than disability. It is a form of ability to feign injury or disability that does not exist. Had appellee in this case been malingering his disability, the Commission might well have determined that he had none. If appellee was suffering a true hysterical paralysis or reversionary reaction of a total degree and permanent nature as a result of the injury, the Commission might well have found that his permanent partial disability amounted to considerably more than the 60% awarded in this case.

In Larson's Workmen's Compensation Law, § 42.22, numerous cases from other jurisdictions are cited in support of the following statement:

". . . [W]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability including the effects of the neurosis is compensible. Dozens of cases, involving almost every conceivable kind of neurotic, phychotic, depressive, or hysterical symptom or personality disorder have accepted this rule."

The opinions of attending physicians and medical experts are admissible as competent evidence when properly presented in a compensation case, but such opinions are not conclusive. They are only to be considered by the Commission along with all other competent evidence, medical and otherwise, in arriving at the degree of permanent partial disability in a compensation case.

Appellant argues that there is no evidence to sustain the Commission's award of 60% permanent partial disability. It is true that no one testified that claimant had a 60% permanent partial disability. Neither did any witness, including the appellee's own testimony, fix his partial disability at 50% or 70,% but there is substantial

evidence in the record that appellee has suffered a disability both in the loss of use of his body as a whole, and in loss of capacity to earn in the same or any other employment, the same wages he was receiving at the time of the injury. There is substantial evidence that this disability is permanent in nature and we are of the opinion that there is substantial competent evidence in the record to justify the Commission's order and award based on a 60% permanent partial disability to the body as a whole.

Judgment affirmed.