DACUS CASKET COMPANY *v.* MILDRED LOUISE HARDY

5-5561                                467 S. W. 2d 713

Opinion delivered June 7, 1971

*Jimason J. Daggett,* for appellant.

*Rieves & Rieves,* for appellee.

FRANK HOLT, Justice. This is a workmen's compensation case. Appellee fell and sustained a compensable back injury on January 26, 1968, while lifting a casket. After a spinal disc operation, she returned to work on June 24, 1968, and on February 6, 1969, sustained a second injury by a fall. A referee determined that as a result of the first injury, appellee had sustained a 15% permanent partial impairment of the body as a whole and that her second injury did not result in any permanent disability. On appeal the full commission increased the award for the first injury to 25% permanent partial disability to the body as a whole, and also awarded 10% permanent partial disability to the body as a whole as a result of the second injury. The circuit court affirmed the commission and from that adverse ruling comes this appeal.

For reversal the only issue presented questions the sufficiency of the evidence to support the commission's findings. Appellant argues that the commission completely ignored the basis of the referee's finding, based upon the medical evidence that appellee's permanent partial disability was only 15%, and that no competent testimony, except her own, was offered to support a finding of greater disability.

We reiterate our well-established rule that in a workmen's compensation case, the findings of the referee are without significance on appeal to the circuit court or to this court. *Lane Poultry Farms* v. *Wagoner,* 248

Ark. 661, 453 S. W. 2d 43; *Moss* v. *El Dorado Drilling Co.,* 237 Ark. 80, 371 S. W. 2d 528 (1963). Also, we have often said that the degree of disputed disability incurred by a claimant as a result of an injury is a question of fact to be determined by the commission and we will affirm its finding if there is any substantial evidence to support it. *Potlatch Forest, Inc.* v. *Smith,* 237 Ark. 468, 374 S. W. 2d 166 (1964); *Pearson* v. *Faulkner Radio Serv. Co.,* 220 Ark. 368, 247 S. W. 2d 964 (1952). We thus review the evidence.

Appellant concedes that appellee incurred a 15% permanent partial disability as a result of the first injury. However, it asserts that after the first injury, appellee returned to work and accomplished her tasks until her second fall which resulted in an injury temporary in nature and totally unrelated to the original injury.

Dr. Canale testified to having seen appellee on February 15, 1968, for the injury she had received on January 26, 1968, and diagnosing her injury as a herniated L-5 disc. He performed an operation and removed the disc. He recommended that appellee should not return to work until June 22, 1968, and that upon her return she should not perform work requiring her to lift over 35 to 40 pounds. He did not see appellee after June 6 until the first of July when she again visited his office, after returning to her work, and complained of- low back pain. He recommended that she continue to work. Dr. Canale next saw appellee after her second injury. He stated that in his opinion appellee had a lumbosacral strain as the result of her second fall, but that she had not suffered any additional permanent disability. However, he also testified to having written a letter to Dr. Deneke (appellee's treating physician subsequent to her second injury) recommending- that appellee give up her present employment since it was causing her difficulty.

Dr. Deneke stated in a report to the Arkansas Rehabilitation Service that appellee should avoid walking, standing, pushing and pulling; and that she should be trained for work which could be accomplished "in a

sitting position" and should not engage in an occupation requiring standing for a whole work period. Dr. Deneke, along with Dr. Tooms (another examining orthopedic specialist), felt that appellee had a 10-15% permanent partial disability based on her first injury and none on her second one. The three doctors appear to agree about appellee's inability to continue her previous employment with appellant as a result of her second injury.

Appellee is 43 years of age, has completed one-half of the ninth grade, and is without any special training. At the time of both injuries, she sewed linings in caskets for the appellant. This job required her to reach, bend, walk, stoop, and to lift the foot part of caskets. After her first injury she returned to this work for approximately seven months, missing only six and three-quarter days which included days she saw a doctor. About a month after the second injury she again returned to this work. Her back hurt her so much, however, that she was irregular in her work attendance. About two months after appellee returned to her work, appellant terminated her employment because of sporadic absenteeism. It appears that some of the days she missed (12½ in two months) "were days when she was hospitalized" or undergoing a doctor's examination. Since then she has been unable to find other work. Her other work history consists of being a waitress and shoe store clerk. She applied for a position which was available through the Employment Security Division but was advised by Dr. Deneke not to take it because the position involved stooping, lifting, bending, and standing.

We have held that permanent partial disability can consist of functional disability or loss in earning capacity or a combination of both. *Wilson & Co.* v. *Christman*, 244 Ark. 132, 424 S. W. 2d 863 (1968). There we said:

"The opinions of attending physicians and medical experts are admissible as competent evidence when properly presented in a compensation case, but such opinions are not conclusive. They are only

to be considered by the commission along with all other competent evidence, medical and otherwise, in arriving at the degree of permanent partial disability in a compensation case.

Appellant argues that there is no evidence to sustain the commission's award of 60% permanent partial disability. It is true that no one testified that claimant has a 60% permanent partial disability. Neither did any witness, including the appellee's own testimony, fix his partial disability at 50% or 70%, but there is substantial evidence in the record that appellee has suffered a disability both in the loss of use of his body as a whole, and in loss of capacity to earn in the same or any other employment, the same wages he was receiving at the time of the injury."

In that case 30% was the highest amount of permanent partial disability that existed, according to the medical evidence; however, we affirmed the commission's award of 60%.

Likewise, in the case at bar the medical evidence would limit appellee's recovery to 15%; however, the commission awarded a total of 35% permanent partial disability as a result of the two injuries. Following the second injury the doctors advised that appellee would be restricted on the labor market to performing tasks only in a sitting position. Dr. Deneke testified:

"* * * she made an honest effort to work, and I felt like that it was proper to recommend that she not continue in this capacity that she was working under at the Dacus Casket Company and recommended that she seek help from the Vocational Rehabilitation Service to learn a new trade and secure a job that would enable her to work in a sitting position rather than in a standing position lifting ten to fifteen pounds of weight in a position that necessitated her back to be in a flexed position."

Following her second injury appellee applied to Vocational Rehabilitation but that agency did not have any available position allowing her to work in a sitting position. Appellee testified that she sought work with a former employer who had a cashier's position open but was unacceptable because of her condition. She was refused work as a shoe clerk when the manager received a doctor's report about her limited physical condition. Appellee also testified that after the second injury she had unsuccessfully tried to sew. She takes pain and sleeping pills provided by Dr. Deneke to alleviate her back pain; otherwise, she can only sleep two to three hours. Her dependent children do her housework.

The question presented in this case is one of credibility and, thus, a matter within the exclusive province of the commission. *Kivett* v. *Redmond Co.,* 234 Ark. 855, 355 S. W. 2d 172 (1962). The commission reviewed the testimony adduced by the appellant and the appellee, and evaluated the conflicting evidence. Its finding has the same verity as that of a jury. Appellant's attack upon appellee's testimony as to the extent of her injuries, being in excess of the medical testimony, and her attempts to obtain employment, even if uncorroborated, is pertinent only to appellee's credibility.

In the case at bar the appellee suffered two separate injuries in the employment of the-same employer. After the first injury she returned to work for about seven months and apparently performed her duties satisfactorily. After the second injury she was terminated a short time after returning to work because of sporadic absenteeism occasioned by the disabling effects of this injury. She was then restricted by her doctors to work that could be performed only in a sitting position. Further, she was handicapped by her age, lack of education, and limited work experience. As in *Christman,* her former employers and prospective employers refused her employment due to doctors' reports. Certainly it must be said that when we view the evidence most favorably

to the commission's finding, as we must do, and then apply the long-established substantial evidence rule, the total award of 35% to the claimant for both injuries is justified. In the circumstances, we deem it unnecessary, and think it only academic, that we approve the allocation of a separate percentage of disability to either injury.

Affirmed.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting in part. I agree that there is substantial evidence to sustain the award pertaining to appellee's first injury. I find no substantial evidence to support the award as to the second injury. The finding of any permanent disability arising out of the injury seems to me to be in defiance of the medical testimony and to have required the commission to accept its own medical conclusions. In order to affirm as to this portion of the disability, it must be assumed that the commission's knowledge was substantial evidence.

The burden was upon appellee to establish the extent of her injury. *Taylor* v. *Plastics Research*, 245 Ark. 638, 433 S. W. 2d 830. The claimant testified that she went back to work after her first injury, but she could hardly do the work and her back hurt all the time. She took Bufferin and went to the doctor on account of pain. She did not work full time more than four weeks, because she was unable to do so. She did not return to the doctor because he had told her to take Bufferin when she had pain, but she had found this did not help. She stated that she was not really able to work after the first injury, but she had to work. She expressed her opinion that the second injury did more than just strain her, but stated that she was not a doctor and anyway she didn't know. She was still having difficulty at the time of the hearing.

Appellee offered medical reports in support of her claim. Dr. D. J. Canale saw her on March 1, 1969, and

expressed the opinion that the claimant was exaggerating her symptoms. He advised her to go to work whenever she felt like it. On April 10, 1969, Campbell's Clinic evaluated her condition. In their opinion her then present symptoms represented an acute low back strain, primarily musculoligamentous in origin, superimposed upon a back which had not completely recovered from her surgery resulting from the first injury. They further were of the opinion that these symptoms would subside upon conservative treatment and that claimant would eventually have no permanent impairment, beyond that which she sustained as a result of her first injury, because of her most recent injury. On May 1 Dr. Robert E. Tooms of that clinic advised that claimant had a permanent partial impairment to the body as -a whole from- her previous injury, that her acute low back strain was -a temporary condition, that she was unable to do the work required by her job on April 10, 1969, and that she would be unable to consistently perform heavy work because of her previous ruptured disc. On June 13, 1969, Dr. Milton Deneke expressed the opinion that claimant no longer had any disability resulting from her injury of February 9, 1969. On June 18, 1969, in reporting that he had discharged claimant from further treatment, Dr. Canale said that he did not feel that she suffered any permanent disability from this second injury. On July 9, 1969, Dr. Canale stated that he did not feel that appellee had suffered any permanent disability as a result of her February 9, 1969, injury, but said that he did not think she should return to her previous employment.

On August 13, 1969, Dr. Deneke's deposition was taken on behalf of respondent. He restated his opinion that the second injury was temporary and that it did not lead to any permanent disability. His deposition is epitomized in the following answer:

I feel this lady has a permanent disability because of the previous injury but that I do not feel that this has been aggravated by this second injury and that I feel that because of my examination

and because of the opinion of the two specialists agreeing with my opinion, we all feel that she has reached maximum benefit from this and that anything residual is really related to the first injury.

Dr. Deneke stated that he would not have recommended that Mrs. Hardy return to the work she had been doing if he had seen her after her back surgery.

In a deposition on August 20, 1969, Dr. Canale testified that he could not find any evidence of any serious injury to claimant at all after her fall on February 9, 1969, but felt that she did have a permanent partial disability from her original ruptured disc. Dr. Tooms anticipated a gradual and complete recovery from the second injury by Mrs. Hardy when he gave his deposition on August 22, 1969.

Appellee relies upon our decisions in *Glass* v. *Edens*, 233 Ark. 786, 346 S. W. 2d 685, and *Wilson & Co.* v. *Christman*, 244 Ark. 132, 424 S. W. 2d 863, to justify a finding by the commission contrary to all medical evidence in this case. I submit that neither case supports the theory. In *Glass* v. *Edens*, we said that, along with the medical evidence as to percentage of disability, consideration should be given appellee's age, education, experience and other matters affecting wage loss. In *Christman*, we simply held, as in *Glass*, that the commission was not *limited* to medical evidence only in arriving at the *amount or extent of permanent partial disability*. We said that medical opinions are not conclusive as to the *degree* of permanent partial disability. In both of those cases there was medical evidence establishing that permanent partial disability was caused by an injury. I cannot find where we have said that a claimant's testimony, contrary to medical evidence adduced by him, is substantial evidence that permanent disability resulted from an injury. Certainly we have not said so where the claimant sought to establish permanent disability from an injury following a prior permanently disabling injury.

We have held that where questions before the commission address themselves peculiarly to the realm of scientific knowledge, the commission cannot reach its own independent medical conclusions in defiance of all medical testimony in the record. *W. Shanhouse & Sons* v. *Simms,* 224 Ark. 86, 272 S. W. 2d 68. Even if it could be said that the question whether the claimant's back injury caused any permanent disability was not peculiarly within the realm of scientific knowledge, I do not see how the existence of causal connection of a permanent partial disability as between two back injuries can be taken out of that field.

If we say that claimant's increased rate of absenteeism after the second injury is sufficient evidence to support the commission's finding, in spite of her testimony that she was really unable to do the work after the first injury and in spite of all the medical testimony in the record, we have not only abandoned the rule of *Shanhouse,* we have discarded the substantial evidence rule in favor of something less than a scintilla.

I understand the majority opinion to imply that there is sufficient doubt about evidentiary support for permanent disability arising from the second injury that an outright affirmance of the commission's findings would be inappropriate. The commission's action is approved on the basis that it found a total of 35% disability, that there is overall substantial evidence to support that total percentage of disability and that the matter of allocation of the disability to any particular injury somehow becomes unnecessary. I cannot agree to this approach. I feel that the court is making a factual determination as to the award and usurping the function of the Workmen's Compensation Commission.

The findings of fact made by the commission are *conclusive* and *binding* upon the courts. Ark. Stat. Ann. § 81-1325 (b) (Repl. 1960); *John Bishop Construction Co.* v. *Orlicek,* 224 Ark. 182, 272 S. W. 2d 820.

The commission did not find that appellee had suffered a 35% disability from the- first injury or that

allocation to the separate injuries was unnecessary. The commission specifically found that the claimant suffered a 25% permanent partial disability to the body as a whole as a result of the first injury and an additional 10% as a result of the second injury and based its award on these findings. Those percentages of disability are binding upon us upon review, which is limited to questions of law. The courts may modify, reverse, remand for rehearing or set aside the order or award, if:

1. The commission acted without or in excess of its powers.

2. The order or award was procured by fraud.

3. The facts found by the commission do not support the order or award.

4. There was not sufficient competent evidence in the record to warrant the making of the order or award.

See *Solid Steel Scissors Co.* v. *Kennedy,* 205 Ark. 958, 171 S. W. 2d 929.

The question whether there is substantial evidence to-support the commission's findings of fact- is one of law. *Eddington* v. *City Electric Co.,* 237 Ark. 804, 376 S. W. 2d 550. If properly supported they have the force and effect of a jury verdict. *John Bishop Construction Co.* v. *Orlicek,* supra. We cannot affirm, in spite of an unsupported fact finding, on trial de novo, as we might in a chancery case. See *Solid Steel Scissors Co.* v. *Kennedy,* supra. We are left, I submit, with a finding of fact supported by substantial evidence that appellee suffered only 25% permanent partial disability to the body as a whole due to her first injury. Appellee did not appeal from that finding. If the finding that a 10% disability attributable to the second injury was not supported by substantial evidence, then there is no basis for an award based on a 35% permanent partial disability on - the first injury. The only modification we

could make would be to reduce the amount awarded to that amount due for a 25% permanent partial disability.

I have been unable to find any precedent for this court's action in this case. As a matter of fact, we have said that the courts exceed their authority when they attempt to determine the amount of an award. *W. C Burrow Construction Co.* v. *Langley,* 238 Ark. 992, 386 S. W. 2d 484. In that case the commission had awarded the claimant 15% permanent partial disability due to injuries to his back. The claimant's disabilities increased, but the commission found the increase to be unrelated to his injury. We agreed with the circuit court that appellee was entitled to an additional - disability award, but held that the amount of the award was the function of the commission and that the courts were without authority in the matter. The case was remanded for determination of a proper award by the commission.

In *Moss* v. *El Dorado Drilling Co.,* 237 Ark. 80, 371 S. W. 2d 528, we were confronted with a case involving two separate back injuries, wherein there was a question whether the claimant's disability was attributable to the first or the second injury. While two employers were involved there, we said that there was substantial evidence to prove that the claimant's disability was due to the first injury and no substantial evidence to the contrary. The case was remanded to the commission for further proceedings not inconsistent with our opinion.

In *Long-Bell Lumber Co.* v. *Mitchell,* 206 Ark. 854, 177 S. W. 2d 920, even though the commission made an award, there was no specific finding of temporary partial disability. The commission had made a finding that there was no permanent partial disability, but stated that the claimant was suffering fron. the effects of the injury. Its award was for an operation and for temporary partial compensation. While we said that the commission had evidently found that there

was a temporary partial disability, in spite of its failure to specifically say so, we remanded the case for further proceedings without expression of our opinion on the facts, saying that this was the correct procedure on the matter of a definite finding on temporary partial disability.

Neither of these cases is exactly parallel with the present one. All are indicative, however, that the commission should make the fact findings as to the extent of disability attributable to a particular injury. The most that could be said is that they would indicate the possibility of a remand of this case. In my opinion, we cannot affirm, but must either reduce the award to the amount proper for a 25% permanent partial disability or remand to the commission for further proceedings.

J. FRED JONES, Justice, dissenting. I concur in the results reached by the majority in this case, but I disagree with the manner in which the Commission arrived at the results and as affirmed by the majority opinion.

This case concerns *permanent partial* disability and not temporary total disability.[1] Permanent partial disability may consist of functional disability, loss in earning capacity, or it may consist of a combination of both functional disability and loss in earning capacity. *Wilson & Co., Inc.* v. *Christman*, 244 Ark. 132, 424 S. W. 2d 863.

In the case at bar Mrs. Hardy sustained an injury to her back in 1968 which resulted in the surgical removal of a large herniated disc, and even though she returned to work following her recovery from the surgery, there is no question that she still had some disability resulting from her injury. Her doctors advised her that she was not to do any heavy lifting and she testified that she was unable to do so. She testified that she was not actually able to work following her 1968 injury but that she attempted to do so because she felt that she had to

[1]For a case lacking substantial evidence to separate disabilities in a *temporary total* disability case, see *Hollifield* v. *Bird & Son, Inc.*, 227 Ark. 703, 301 S. W. 2d 27.

work. As a matter of fact the employer, who was self-insured, recognized that Mrs. Hardy had sustained some permanent partial disability as a result of her 1968 injury, and on the basis of medical reports paid her for a 10% permanent partial disability to the body as a whole.

Mrs. Hardy admittedly sustained a subsequent accidental injury while working for the same employer when she slipped on the floor and fell in 1969. Following this second injury her previous symptoms were revived and aggravated; she admittedly suffered some temporary total disability for which she was paid compensation due to this second injury. She was given rather extensive medical examinations following the second injury and none of the doctors who examined her were able to find any physical impairment that she did not have following her first injury and surgery, so they concluded that whatever disability she had resulted from the first injury. This being the situation, the Commission had available all the evidence in making a judicial determination of the full extent of Mrs. Hardy's overall disability as a result of the two injuries, but was left with only the testimony of Mrs. Hardy in attempting to arrive at how much of her disability was occasioned by the first injury and how much was occasioned by the second injury. As a matter of fact Mrs. Hardy made no claim for permanent injury resulting from the second injury. Mrs. Hardy's contentions were stated by her attorney at the hearing before the referee as follows:

"On behalf of the claimant, Mildred Hardy, it is her contention that she suffered an injury to her back on January 26, 1968, in the course of her employment with Dacus Casket Company. That this injury necessitated the herniated L-4 disc and as a result of this injury and subsequent surgery she has been permanently disabled. That her permanent disability has been fixed by her attending physician 10 to 15% to the body as a whole. This percentage fixed by the physician related to functional disability only and that due to other factors claimant is

permanently disabled to a greater degree than 10 to 15% to the body as a whole. Secondly, the claimant, on February 6th, 1969, fell while at work for Dacus Casket Company and received a new injury to her back. That as a result of the new injury she was hospitalized by Doctors Canale and Deneke for the purpose of performing a myelogram on May 26, 1969. That she was not released as able to perform any duties by Dr. Canale until June 14, 1969, and she is entitled to additional compensation for this period of time—that is May 26th of '69 through June 14th of '69 and also that the respondent, Dacus, is liable for the payment of all of the doctors, hospital and drug bills relating to both injuries."

Mrs. Hardy's testimony, pertinent to the issue, is as follows:

"A. When I first went back to work Buddy put me on lining panels and I thought I could line out panels.

Q. Buddy is the foreman?

A. Yes and I told him that I just could not lift those panels that I would like to try lining out—of course he takes his time about putting anybody anywhere.

Q. At any rate, did he let you?

A. He finally put me back over there lining out.

Q. Were you able to perform that work?

A. I did.

Q. And you were doing all right until you fell the second time?

A. I was working.

Q. Did you miss any time regularly?

A. Certainly I missed some work.

Q. I think you said you had three full weeks and that is all?

A. I am not sure—it might have been four weeks —full checks that I drew—from June 24th until I was hurt again in February of this year.

Q. You were able to perform your work after you went back after your first injury?

A. Well I worked—I wasn't able, no, but I had to work.

Q. Do you feel that you are in worse shape now than you were after your first injury?

A. Well I was not really able to do that after my first injury but as I said I had to work.

Q. Do you think that you are now back to the point that you were after your first injury when you returned to work?

A. I think the second injury more than just strained—well I am not a doctor but anyway I don't know—I still have difficulty.

Q. What I am trying to find out—are you having any more difficulty now after the second accident than you did after the first accident?

A. Yes—I guess it is about—

Q. Do you think you have gotten back to the point that you were immediately before your second fall?

A. No."

It is apparent to me from the record before us that following her injury and surgery in 1968, Mrs. Hardy was not able to do the work she had previously been doing but did it anyway because she felt that she had to, and because her employer finally permitted her to more or less select the type of work she did. After Mrs. Hardy was terminated following her second injury, and after she was released from medical treatment following that injury, she was for the first time since either injury, forced into the open labor market and because of the disability she had sustained she was unable to obtain available employment which she had previously done without difficulty.

In my opinion there is substantial evidence to sustain the Commission's findings that the claimant has suffered 35% permanent partial disability to her body as a whole, but I find no evidence in the record whereby 25% of the disability can be attributed to the first injury and 10% to the second injury. It is my view that the second injury and resulting disability only evidenced and emphasized the *permanent partial* disability the claimant already had; and it is my opinion that under all the evidence pertaining to the second injury, one could reasonably assume that Mrs. Hardy could and would have returned to work without disability or complaint following her release by the doctors following her second injury, had she never had the first injury and disability resulting therefrom. By the same token, the evidence of record convinces me that if Mrs. Hardy had never sustained her second injury, she would have experienced the same difficulty in finding employment as she did experience following her termination from "lining out" caskets.

I would remand for a simple determination of the nature and extent of the disability and an award of benefits.