Carol HILL et al *v.* CGR MEDICAL
CORPORATION et al

CA 83-215                                    660 S.W.2d 171

Court of Appeals of Arkansas
Division II
Opinion delivered November 2, 1983
[Rehearing denied December 14, 1983.]

*McMath Law Firm, P.A.,* by: *Phillip H. McMath,* for appellants.

*Steve Clark,* Atty. Gen., by: *David S. Mitchell,* Asst. Atty. Gen., for appellees.

GEORGE K. CRACRAFT, Judge. Carol Hill and her four children, widow and dependents of Jerry Thomas Hill, deceased, appeal from an order of the Workers' Compensation Commission holding that the Death and Permanent Total Disability Bank Fund is not liable to them for future weekly benefits under Ark. Stat. Ann. § 81-1310 (c) (2) (Repl. 1976). The matter was submitted to the Commission on an agreed statement of fact and only questions of law were presented. The appellants contend that the construction given that section by the Commission was erroneous as a matter of law.

Section 81-1310 (c) (1) (Repl. 1976) provides that the maximum limitation on period of payment (450 weeks) and total compensation prescribed for disability shall not apply in cases of permanent disability or death. Section 81-1310 (c) (2) at the time the events giving rise to this appeal occurred provided[1]:

> (2) The first Fifty Thousand Dollars ($50,000) of weekly benefits for death or permanent total disability shall be paid by the employer or his insurance carrier in the manner provided in this Act. An employee or dependent of an employee who receives a total of Fifty Thousand Dollars ($50,000) in weekly benefits shall be eligible to continue to draw benefits at the rates

---

[1]This section was amended in 1981 to increase the carrier's liability to $75,000.

prescribed in this Act but all such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable from the Death and Permanent Total Disability Bank Fund.

The narrow issue presented by this appeal is "does the liability of the Death and Permanent Total Disability Bank Fund to continue payment of weekly benefits arise under that section where the initial $50,000 obligation of the carrier had been discharged in part by payment of weekly benefits and the balance by waiving its right as subrogee to participate in a recovery from a third party tortfeasor in consideration for not being required to pay future weekly benefits to the widow and dependents of a deceased worker."

We conclude that the liability of the Bank Fund does arise under these circumstances, but only on the date on which the carrier's $50,000 limitation would have been discharged had there been no settlement.

The facts recited in the Commission's opinion established that Jerry Thomas Hill was injured while in the employ of CGR Medical Corporation. The employer and its carrier, Liberty Mutual Insurance Company, promptly accepted liability and paid all medical expenses and disability benefits due him until his death over a year later. After his death they continued weekly death benefits to his widow and dependents. The widow brought a tort action against a third party tortfeasor in which Liberty Mutual joined and asserted its right to participate in any recovery to the extent of 66-2/3% of the amount recovered after deducting the cost of recovery pursuant to Ark. Stat. Ann. § 81-1340 (Supp. 1976). The tort claim was settled for a sum in excess of $125,000, and after the cost of collection was subtracted, there remained for distribution the sum of $69,000. At that time the carrier had paid in excess of $115,000 in medical expenses and $16,000 in weekly death benefits and would have been entitled to receive $46,194.38 from the settlement. As part of the settlement, however, Liberty Mutual Insurance Company agreed to waive its subrogation rights to that sum in consideration of its being absolved of having to pay future benefits to the widow and dependents.

This agreement was approved by the Administrative Law Judge on July 16, 1981 in an order of distribution. In that order it was stipulated that the children's share of the settlement was to be invested on behalf of the widow so that she would have a combined annual income for both herself and her children in excess of the benefits paid by the Workers' Compensation Law. In that order the Administrative Law Judge noted that the widow took the position that "once this credit is granted to Liberty Mutual, as Workers' Compensation carrier, for the balance owed on the $50,000 limitation, the widow and children would be able to draw future benefits from the Death and Permanent Total Disability Bank Fund." As the matter had not been fully explored before the Commission it reserved this issue for consideration at an evidentiary hearing. However, no evidentiary hearing was had and the matter was submitted on briefs. The Death and Permanent Total Disability Bank Fund submitted a brief in support of its position that it should not be held liable. From these facts the Administrative Law Judge reached the following conclusions:

> In the instant case, the respondent-carrier has paid $16,626.00, in weekly benefits, leaving some $33,374.00 remaining on their liability up to the $50,000 ceiling. A fair reading of the statute reveals that this amount *'shall be paid by the employer or his insurance carrier'* and *'shall be received by the employee or dependent of an employee,'* before any liability might be found to exist with regard to the Death and Permanent Total Disability Bank Fund. Nowhere, as contained within this statute, is there any reference as to credits to be given an employer or carrier for sums received or credits given from whatever source.

> In view of this fact, I believe the intent of the statute to be clear, i.e., that it is intended that the Death and Permanent Total Disability Bank Fund shall have no liability for payment to a claimant until the clear mandatory requirements of Ark. Stat. Ann. § 81-1310 (c) (2) have been fulfilled.

> Accordingly, it is hereby found and determined that the claimants in this case shall have no right to

draw benefits from the Fund until the $50,000.00 ceiling has been paid, either by the employer or the carrier and received by an employee or dependent of an employee.

The Full Commission approved and adopted the conclusions of the Administrative Law Judge.

We agree with the Commission that a fair reading of the statute requires that the first $50,000 be paid in weekly benefits by the employer or his carrier and received by the employee or the dependents of an employee before the liability of the Death and Permanent Total Disability Bank Fund arises, and that it is the intent of the statute that the Fund have no liability until these payments have been made in the manner provided in the Act. We do not agree, however, that the Act does not provide for credits which may be given to an employer or carrier under certain circumstances, including those which may arise under Ark. Stat. Ann. § 81-1310 (c) (2).

Ark. Stat. Ann. § 81-1319 (m) (Repl. 1976) provides:

Credit for compensation or wages paid. — If the employer has made advance payments of compensation he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due.

In *Looney v. Sears Roebuck,* 236 Ark. 869, 371 S.W.2d 6 (1963) and *Southwestern Bell Telephone Co. v. Siegler,* 240 Ark. 132, 398 S.W.2d 531 (1966) and *Emerson Electric Co. v. Cargile,* 5 Ark. App. 123, 633 S.W.2d 389 (1982) the courts make clear distinctions between "advance payments of compensation" for which credit may be given and "wages and gratuities" for which no credit is allowed. They declare that where it is established that the amount received was an "advance payment of compensation" the carrier is entitled to an offset by way of credit against future weekly benefits. In other words, where it is shown that both parties intended that the payment be compensation in advance, the credit is allowed against future benefits. In other words, where it is

shown that both parties intended that the payment be compensation in advance, the credit is allowed against future benefits. It is not even suggested in this case that Liberty Mutual, in permitting the appellant to receive its portion of the settlement proceeds, intended to bestow upon appellants a gratuity, or that either party ever considered it as anything other than "advance payments of compensation."

Nor do we find merit in the argument that the proceeds of the settlement were paid not by the carrier but by a third party. The carrier had a statutory right to claim its portion of the settlement proceeds but agreed to relinquish that right in exchange for a release from its obligation to make future weekly payments. The Commission recognized and approved that agreement; it provided in its order of distribution that the funds not be delivered to the dependents in one lump sum but invested and paid to them in installments instead.

We agree with the Commission that there is nothing in this enactment which suggests a legislative intent that the postponed liability of the Bank Fund may be accelerated by action of the parties. Quite apart from legislative intent, there is a compelling reason why that result could not be reached in this case. Although the carrier is entitled to credit against future benefits, the Commission has directed in its order that those benefits are to be paid to the dependents in installments. The statute provides that the liability of the Bank Fund arises after the first $50,000 of weekly benefits have been paid by the carrier and *received* by the dependents "in the manner provided in this Act." "The first $50,000 of weekly benefits" will not be received by these dependents until a future date.

Nor does the fact that under the order of distribution the dependents will receive weekly benefits in amounts which exceed those provided by the Act accelerate the date on which the Bank Fund's liability will arise. Ark. Stat. Ann. §§ 81-1310 (b) (Repl. 1976) and 81-1315 (Repl. 1976) provide the amounts of weekly death benefits and the manner in which they are apportioned. The credit for payments of compensa-

tion in advance can only be allowed in the amounts determined by the provisions of those sections as they fall due. We conclude that the liability of the Bank Fund to continue weekly payments will not arise until the credit for payment of compensation would have equalled the sum of $50,000 had there been no settlement.

Reversed and remanded for further proceedings in accordance with this opinion.

CLONINGER and GLAZE, JJ., agree.