Doris VARNELL *v.* UNION CARBIDE and American Motorists

CA 89-26                                              779 S.W.2d 543

Court of Appeals of Arkansas
En Banc
Opinion delivered November 15, 1989
[Rehearing denied December 13, 1989.*]

---

*Cooper and Rogers, JJ., would grant rehearing. Jennings, J., not participating.

*Thompson & Dodge, P.A.*, by: *John Dodge*, for appellant.

*Davis, Cox & Wright*, by: *Constance G. Clark*, for appellees.

DONALD L. CORBIN, Chief Judge. Appellant was employed as a machine operator's adjuster for appellee, Union Carbide, on July 25, 1985, when she injured her back while stepping off a step. The employer's non-occupational group insurance carrier paid medical benefits for appellant and also, together with the em-

ployer, made payments to appellant of $300.00 per week from July 29, 1985, through November 24, 1985, and $40.00 per week from November 24, 1985, through January 27, 1986, as benefits under a sick pay plan provided by the employer.

A hearing was held before an administrative law judge on February 27, 1986, to determine appellant's entitlement to workers' compensation benefits. Appellant contended that she sustained a compensable accidental injury which entitled her to temporary total disability benefits, permanent partial disability benefits, medical expenses, and a controverted attorney's fee. Appellee contended that appellant had not suffered a compensable work-related injury but alternatively argued that if appellant sustained a compensable injury, it was entitled to credit for the weekly disability benefits and medical expenses previously paid by its group insurance carrier.

The administrative law judge concluded by opinion rendered February 23, 1987, that appellant sustained an injury arising out of and in the course of her employment and that she was temporarily totally disabled from July 26, 1985, to a date yet to be determined. The issue of permanent partial disability was premature at the time of the hearing and was held in abeyance. The administrative law judge also found that appellee was responsible for all reasonable and necessary medical expenses incurred by appellant as a result of her injury. Additionally, the law judge found that appellee was entitled to credit for all amounts previously paid by it and its group insurance carrier toward medical expenses and temporary total disability benefits. In addition, the administrative law judge awarded an attorney's fee on the amounts of weekly benefits and medical expenses previously paid to appellant under the group insurance coverage which was fully funded by appellee but limited the fee to the difference between benefits awarded and those already paid.

Appellant appealed to the Workers' Compensation Commission, contending that the administrative law judge erred in granting appellee credit for the amounts already paid toward her disability and medical expenses by appellee and its group carrier. Appellant also contended that the law judge erred in limiting the amount of attorney's fees to the difference between benefits awarded and benefits already paid. By opinion entered Septem-

ber 8, 1988, the Commission affirmed the opinion of the administrative law judge in all respects.

On appeal, appellant argues the same two points she argued at the Commission level. We reverse on both issues and remand.

## I.

IT WAS ERROR FOR APPELLEE TO BE AWARDED CREDIT FOR ALL DISABILITY BENEFITS RECEIVED BY THE CLAIMANT AS A RESULT OF GROUP INSURANCE COVERAGE AND FOR AMOUNTS PAID IN EXCESS OF THE COMPENSATION RATE UNDER THE GROUP INSURANCE POLICY.

The issue in this point for reversal is whether the payments made by appellee were "advance payments for compensation" allowing for a setoff against previous payments or whether they were "sick pay benefits" for which no setoff is allowed. Appellant argues that the payments were not intended to be advance payments for compensation but "were strictly fringe benefits and taxable as income" to her. Appellee argues and the Commission held that the previous payments were advance payments for compensation and appellees were, therefore, entitled to a setoff against payments already made.

The statute around which this controversy centers is Arkansas Code Annotated Section 11-9-807 (1987) which provides:

> If the employer has made advance payments for compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due. If the injured employee receives full wages during disability, he shall not be entitled to compensation during the period.

The evidence reveals that Gene Bland, the employee relations manager for appellee, testified he was involved in the decision to treat appellant's injury as non-occupational based upon his belief that appellant had periodic back problems "due to whatever cause." Mr. Bland testified that an employee on non-occupational pay receives $40.00 a week from Metropolitan, one of appellee's insurance carriers, and appellee pays the remainder of money necessary to amount to a total of 85% of the employee's

average weekly wages. Mr. Bland testified that the non-occupational pay plan is a noncontributory one to which the employees do not contribute. Bland testified that Blue Cross/Blue Shield of Arkansas is appellee's carrier for medical insurance and that, like the non-occupational coverage, is noncontributory.

The Commission's ruling that the payments to appellant were advance payments for compensation for which appellee was entitled to a credit was predicated upon the following reasoning contained in its opinion:

> While Varnell cites several cases in which the credit was not allowed, the monies paid in those cases did not constitute "advance payments of compensation." For example, the employer's representative in *Looney v. Sears, Roebuck & Company*, 236 Ark. 868, 371 S.W.2d 6 (1963) admitted that a gratuity was intended. Similarly, the payments in *Southwestern Bell Telephone Company v. Siegler*, 240 Ark. 132, 398 S.W.2d 531 (1966) were labeled as "benefits" in the employee's handbook. In Varnell's case, however, the payments could not have been insurance "benefits" since the group health insurance company only paid $40.00 per week and the employer made up the deficit between that and 85% of the employee's weekly wage. It is also obvious that the monies were not payments in lieu of wages since the amount was less than Varnell's wages. Neither were they gratuities since the purpose was to compensate employees for the expenses of illnesses rather than to make a gift or provide a bonus.

> Having eliminated other possibilities (as required by *Siegler*), we conclude that the payments should be treated as advance payments of compensation. If such payments are not so treated, claimants who are dishonest could routinely collect from both the Workers' Compensation carrier and from the group health carrier. On the other hand, where the payment by the group carrier is the employer's mistake, the carrier would have a right of subrogation against the workers' compensation carrier, and the latter would eventually pay the same benefits twice, once to the claimant and once to the group carrier.

Finally, we find this case distinguishable from *Emerson Electric* v. *Cargile*, 5 Ark. App. 123, 633 S.W.2d 389 (1982), where the employee paid the entire premium, and the Court termed the plan a "private contract" having no relevance to the employees' workers' compensation rights. The plan here, by the way of contrast, was fully funded by Union Carbide. We find that Varnell's case is on all fours with *Lion Oil Company* v. *Reeves*, 221 Ark. 5, 254 S.W.2d 450 (1952), where the credit was allowed for payments intended to represent a percentage of wages, which is the situation here. If there is a conflict between *Reeves* and *Cargile*, a decision of the Arkansas Supreme Court obviously controls over a decision of the Arkansas Court of Appeals.

In the *Lion Oil* case relied upon by the Commission, the employer, a self-insurer, paid the employee amounts "aggregating full wages" during his injury period for which the employer received full credit for the excess of the amount paid over what the workers' compensation benefits would have been for that period of time. In making this determination to allow *Lion Oil* such credit, the court stated: "It is highly probable that Reeves [employee] thought the excess payments he received were gratuities, and certainly the oil company was endeavoring to provide for the workers' current needs." In *Looney* v. *Sears Roebuck*, 236 Ark. 868, 371 S.W.2d 6 (1963), the supreme court deemed it wise to limit the holding of *Lion Oil* to its own particular facts making a clear distinction between "advance payments of compensation" and payment of "wages and gratuities." *Looney* specifically held that the excess of wages paid over the weekly compensation award cannot be deducted from the award. Further, it held that the employer cannot make such payments and later claim credit for the excess against an award made. The *Looney* court declared that where it is shown that both parties intended that the payment be compensation in advance, the credit is allowed against future benefits. In the case at bar, we find no evidence suggesting such intent. At the beginning of the hearing before the administrative law judge, counsel for appellees stated that appellant had not been paid anything in the way of workers' compensation benefits and that appellant had not suffered a compensable injury.

While the reasoning by the Commission set out above

may be a plausible alternative that is followed by a minority of jurisdictions, we believe the general rule set out in A. Larson, *The Law of Workmen's Compensation* Section 97.51(a) (1989), is the direction followed by Arkansas to wit:

> As to the private pensions or health and accident insurance, whether provided by the employer, union, or the individual's own purchase, there is ordinarily no occasion for reduction of compensation benefits.

Judge Cracraft writing for a majority in *Emerson Electric* v. *Cargile*, 5 Ark. App. 123, 633 S.W.2d 389 (1982) in reliance upon *Southwestern Bell Telephone Company* v. *Siegler*, 240 Ark. 132, 398 S.W.2d 531 (1966), noted that our supreme court adopted the above Larson's rule insofar as it dealt with health and accident insurance provided by the employer. Judge Cracraft wrote:

> We conclude that the sounder rules to apply are that where the insurance, whether private or company administered, is provided and funded by the employer the rule announced in *Southwestern Bell Telephone Company, supra*, should be followed and the employer afforded the right to show, if he can, that the payments were "payments of compensation in advance."

*Emerson*, 5 Ark. App. at 126, 633 S.W.2d at 391. In *Emerson*, the Commission held that payments made to the claimant were not advance payments of compensation and, therefore, no setoff was allowed. In rendering its decision, the Commission took into consideration that although the insurance was offered through the employer, the claimant paid *all* premiums on the insurance. This court affirmed the Commission's disallowance of a setoff by finding that the relationship was a private contractual one in which the employer did nothing more than make the group coverage available at the employee's sole expense.

In any event, *Southwestern Bell*, cited above, mandates a reversal in the case at bar. At this point, we note that in *Southwestern Bell* the claimant, before his award of permanent partial disability, received full wages during his permanent disability for which his employer claimed a set off. Whereas in the case at bar, the award of permanent partial disability was held in

abeyance and instead deals with a set off claimed by the employer against a current award of temporary total disability. Having noted this distinction, we find that the same principles apply for purposes of allowing or disallowing set offs to employers for amounts previously paid. In *Southwestern Bell*, the employee sustained a knee injury while in the course of his employment and received his normal rate of pay ($128.00 per week) during his disability period under a "Plan" provided by the employer. The "Plan" was contained in a 28 page printed booklet and included disability payments to an injured employee during a period of disability. The "Plan" was fully funded by the employer and the employee made no contribution to it. The language of the "Plan" did not state that any benefits received under it would be considered as advanced payments of compensation.

The employee in *Southwestern Bell* suffered a residual injury and sought partial disability benefits in addition to those benefits previously received under the "Plan" claiming that one had nothing to do with the other. The employer claimed that the payments under the "Plan" represented an advance payment of compensation for disability and that it should be allowed a setoff against the workers' compensation award for any amounts paid the claimant under the "Plan."

The supreme court stated that the interpretation of the "Plan" was a question of law and also noted that without any designation in the "Plan" itself, the monies received by that employee might have been wages, gratuities, benefits or advance payment of compensation, and until the company showed that under the "Plan" such payment "could have been nothing except advance payment of compensation the company failed to establish its case." The court held that only where the employer clearly establishes that the sums paid or provided by it to an injured employee are advanced payments of compensation could it be entitled to any setoff. In all other situations, the employee could recover the full amount of his disability benefits provided under the Workers' Compensation Act.

Applying the principles established in *Southwestern Bell* to the case at bar, the evidence reveals that appellee sought through the testimony of Gene Bland to establish its case and meet its burden of proof to show that the payments received by appellant

were "payments of compensation in advance." Mr. Bland's testimony generally reveals that he has a high opinion of appellant and her work ethic, and would be happy for her to return to work. He also testified that he was involved in the decision to treat appellant's claim as a non-occupational injury; however, he admitted that he did not discuss this matter or his decision in this regard with appellant "at that time or even later." Furthermore, Mr. Bland stated that he acted in good faith in determining to treat appellant's injury as non-occupational and "at that time" he really thought the treatment and payments were in the proper category. Mr. Bland's testimony also revealed general information about appellee's non-occupational injury plan as well as how it is funded, the lack of employee contribution, and the treatment of appellant's claim under this plan.

Appellant's testimony revealed that at the time she filled out the report to claim benefits for her work-related accident, she was not told by appellee nor was she aware that the form she signed was for a non-occupational type incident. Also, she stated that she later refused to sign forms concerning payment of medical bills because she noticed that there was language on the forms categorizing her injury as "non-occupational." There was no viable evidence showing that both parties clearly intended that the payments were compensation in advance. In fact, the evidence bears out that the treatment of appellant's claim as a non-occupational injury was the result of a unilateral decision made by appellee and totally unbeknownst to appellant. It is apparent from case law and from statute that a clear distinction is drawn between money received as "advanced payment of compensation" and "wages and gratuities." *Southwestern Bell Tel. Co. v. Siegler*, 240 Ark. 132, 398 S.W.2d 531 (1966); *Looney v. Sears Roebuck*, 236 Ark. 868, 371 S.W.2d 6 (1963); *Arkansas Louisiana Gas Co. v. Grooms*, 10 Ark. App. 92, 661 S.W.2d 433 (1983); *Hill v. CGR Medical Corp.*, 9 Ark. App. 334, 660 S.W.2d 171 (1983); *Emerson Elec. v. Cargile*, 5 Ark. App. 123, 633 S.W.2d 389 (1982); Ark. Code Ann. § 11-9-102(8), (9) (1987). Based upon the foregoing, there is no substantial evidence to support a finding by the Commission that the payments made to appellant were payments of compensation in advance.

Our standard of review on appeal is whether the

decision is supported by substantial evidence. *Boyd* v. *General Indus.*, 22 Ark. App. 103, 733 S.W.2d 750 (1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Phillips* v. *State*, 271 Ark. 96, 607 S.W.2d 664 (1980). This standard must not totally insulate the Commission from judicial review and render this court's function in these cases meaningless. We will reverse a decision of the Commission where convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Wade* v. *Mr. C. Cavenaugh's*, 25 Ark. App. 237, 756 S.W.2d 923 (1988). In the instant case, we cannot say that fair-minded persons would have reached the same conclusion about granting appellee a setoff against "advance payments for compensation." For the reasons discussed, we reverse on this point.

II.

THE COMMISSION ERRED IN AWARDING HER AN ATTORNEY'S FEE ONLY ON THOSE AMOUNTS IN EXCESS OF THOSE PAID TO HER UNDER THE NON-OCCUPATIONAL DISABILITY PLAN AND THE GROUP MEDICAL INSURANCE PLAN.

We agree with appellant's contention. In *Ragon* v. *Great American Indemnity Company*, 224 Ark. 387, 273 S.W.2d 524 (1954) the supreme court stated that attorney fees in a workers' compensation case should consist of a percentage of the amounts expended for medical services and hospitalization in addition to a percentage of the compensation awarded to the claimant, since the compensation for which the fees are to be derived includes medical and hospital services. A reading of this case and our case, *General Industries* v. *Gibson*, 22 Ark. App. 217, 738 S.W.2d 104 (1987), leaves us with the inescapable conclusion that the allowance or disallowance of an attorney's fee does not hinge on whether the medical bills were paid by a collateral source. The test is that fees are calculated on the amount controverted and awarded. *Hot Spring County Bicentennial Park* v. *Walker*, 271 Ark. 688, 610 S.W.2d 268 (1981); Ark. Code Ann. § 11-9-715 (1987). The claim in the instant case was controverted in its entirety and thus under the authority of

*Ragon*, 224 Ark. 387, 273 S.W.2d 524 (1954) and other cases, appellant is entitled to an attorney's fee based upon the total controverted claim without a reduction for amounts paid by collateral sources. We reverse and remand for the entry of an order in keeping with this opinion.

Reversed and remanded.

JENNINGS, J., not participating.

WRIGHT, ERNIE E., Special Judge, agrees.

ROGERS, J., concurs.

COOPER, J., dissents.

JUDITH ROGERS, Judge, concurring. I concur in the result and decision of the court as it is both a correct statement and clarification of the law at the present time. I am concerned, however, that the burden of proof is such that it erects an almost impossible barrier for the employer to overcome to establish that such payments were intended as advance payment of compensation. Consequently, I am concerned that injured employees will not receive needed funds since payments may be withheld pending final adjudication. The employers may fear that the payments will subsequently not be credited as advance payments of compensation.

JAMES R. COOPER, Judge, dissenting. I dissent because I believe there was substantial evidence to support the Commission's finding that the payments made to the appellant by the appellee were advance payments of compensation. In *Emerson Electric* v. *Cargile*, 5 Ark. App. 123, 633 S.W.2d 389 (1982), we held that, where the employer provides insurance, the employer may attempt to show that the payments were advance payments of compensation. The Supreme Court drew distinctions between advance payment of compensation and other types of payments made by an employer in *Southwestern Bell Telephone Co.* v. *Siegler*, 240 Ark. 132, 398 S.W.2d 531 (1966). The *Siegler* Court held that an employer is entitled to an offset when the employer clearly establishes that the amount received by the employee was an advance payment of compensation:

> The money which Siegler received might have been either (a) *wages*, (b) *gratuities*, (c) *benefits*, or (d) *advance*

*payment of compensation.* Until the Company showed
that under the Plan such payment could have been nothing
except *advance payment of compensation,* the Company
failed to establish its case.

*Id.* at 136 (emphasis in the original). I submit that an employer
has met his burden under *Siegler* when he has produced substan-
tial evidence to show that the payments to the employee were not
wages, gratuities, or benefits, and could therefore have been
nothing except advance payment of compensation, and that the
Commission could properly find that the appellee did so in the
case at bar.

With regard to wages, there was evidence to show that the
appellant was not working when the payments were made and
that, unlike the circumstances presented in *Siegler, supra,* the
amount paid the appellant was not identical to her weekly wages.
The amount paid the appellant also provided some evidence that
the payments were not gratuities: the record shows that the
payments were neither identical to the appellant's wages, nor was
the amount determined arbitrarily. Instead, there was evidence
that the amount of the payments was calculated as a percentage
of the appellant's weekly wages. Workers' compensation benefits
are likewise computed as a percentage of the employee's weekly
wages. *See* Ark. Code Ann. § 11-9-518 (1987). Furthermore, this
case is distinguishable from *Looney* v. *Sears Roebuck,* 236 Ark.
868, 371 S.W.2d 6 (1963), where the employer's agent testified
that the payments were intended as gratuities. No such testimony
appears in this record.

The evidence with respect to benefits requires more discus-
sion. *Siegler, supra,* draws a distinction between benefits and
advance payments of compensation, but does not say what that
distinction is. Compensation is itself a form of benefit, *see Brooks*
v. *Arkansas-Best Freight System,* 247 Ark. 61, 444 S.W.2d 246
(1969), which defines "compensation" under what is now Ark.
Code Ann. § 11-9-518 (1987) as "money benefits paid to the
employee for disability." Therefore, "benefits" under *Siegler*
must refer to benefits *other* than those payable to employees for
disability. Under the employer's "Plan" in *Siegler,* benefits were
not limited to disability, but were also payable to employees for

loss of time for unspecified reasons and as pensions. 240 Ark. at 134-35. In the case at bar, however, the only evidence relating to the purpose for which such payments were made was the employer's agent's testimony that the payments were predicated on the employee having suffered an injury resulting in an inability to work. The evidence therefore showed that the payments were made for disability, and were thus not the type of "benefits" excluded under *Siegler*.

We review the findings of the Commission in the light most favorable to those findings, giving the testimony its strongest probative force in favor of the Commission's action, to determine whether they are supported by substantial evidence. *Tyson's Foods, Inc.* v. *Disheroon*, 26 Ark. App. 145, 761 S.W.2d 617 (1988). We are required to give the Commission's findings the force and verity that would attach to a jury verdict, *Central Mahoney, Inc.* v. *York*, 10 Ark. App. 254, 663 S.W.2d 196 (1984), and even should the Commission's findings appear to be contrary to the preponderance of the evidence, we must affirm if reasonable minds could have reached the conclusion reached by the Commission. *Hyman* v. *Farmland Feed Mill*, 24 Ark. App. 63, 748 S.W.2d 151 (1988). We reverse the decision only where we are convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Id*. I am convinced that the appellee presented sufficient evidence to show that the payments were not wages, gratuities, or benefits to permit reasonable minds to conclude that the payments were intended as advance payment of compensation.

Nor do I agree with the majority's holding that the appellant is entitled to an attorney's fee based on the total amount controverted without reduction for amounts paid by collateral sources. As the majority correctly notes, attorney's fees are calculated on the amount controverted and awarded. *General Industries* v. *Gibson*, 22 Ark. App. 217, 738 S.W.2d 104 (1987). Although the payment of part of the medical bills by a collateral source was not found to be significant in that case, the collateral source in *Gibson* was an insurer which had intervened in the case. In contrast, the collateral source in the case at bar was an insurer which had not intervened or otherwise disputed its liability in any manner. I do not agree that the amounts paid by the insurer in the

case at bar were "controverted" for the purposes of awarding attorney's fees.

I dissent.