DEATH AND PERMANENT TOTAL DISABILITY
TRUST FUND *v.* HEMPSTEAD COUNTY and Public
Employee Claims Division

CA 89-523                                          796 S.W.2d 351

Court of Appeals of Arkansas
En Banc
Opinion delivered October 3, 1990
[Rehearing denied October 31, 1990.*]

*Cracraft, Mayfield, and Rogers would grant rehearing.

*David L. Pake*, for appellant.

*Michael E. Surguine*, Public Employee Claims Division, for appellee.

ERNIE E. WRIGHT, Acting Chief Judge. Appellant, Death and Permanent Total Disability Trust Fund, appeals from a November 2, 1989, decision of the Arkansas Workers' Compensation Commission finding that appellee, Public Employee Claims Division, in calculating its maximum liability under Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976), is entitled to credit for both permanent total disability benefits paid to the claimant during his lifetime and death benefits paid to claimant's dependent.

The facts in the case are not in dispute. The claimant suffered a compensable injury to his hip on July 30, 1977, and reached the end of his healing period on September 17, 1979. He was assigned a permanent physical disability rating of 40% to the body as a whole. On September 17, 1979, appellee Public Employee Claims Division began paying permanent total disability benefits to the claimant at the rate of $84.00 per week. On November 14, 1981, the claimant died as a result of complications from surgery to replace his injured hip. The claimant was survived by his wife and on November 15, 1981, appellee Public Employee Claims Division began paying widow's benefits to claimant's wife in an amount equal to $47.60 per week.

The only issue on appeal is whether the Commission erred as a matter of law by allowing appellee to credit weekly permanent disability benefits paid the employee during his lifetime against its maximum obligation to the surviving spouse. The date of the injury was July 30, 1977, and Ark. Stat. Ann. § 81-1310(c)(2) is applicable. The statute reads in part:

> The first Fifty Thousand Dollars ($50,000) of weekly benefits for death or permanent total disability shall be paid by the employer or his insurance carrier in the manner provided in this Act [§§ 81-1301—81-1349]. An employee or dependent of an employee who receives a total of Fifty Thousand Dollars ($50,000) in weekly benefits shall be

eligible to continue to draw benefits at the rates prescribed in this Act but all such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable from the Death and Permanent Total Disability Bank Fund.

Appellant, citing *Bolden* v. *Watt*, 290 Ark. 343, 719 S.W.2d 428 (1986), asserts that the first rule in interpreting a statute is to construe it just as it reads by giving the words their ordinary and usually accepted meaning. Appellant argues that the disjunctive particle "or" in the first sentence of the statute permits only one reasonable interpretation, that being before benefits become payable from the Death and Permanent Total Disability Bank Fund, there must either be payment of a total of $50,000 of weekly permanent total disability benefits *or* there must be payment of a total of $50,000 of weekly death benefits.

Additionally, appellant contends a claimant's permanent total disability benefits and a dependent's death benefits are "two entirely separate entities" that derive from two separate statutory sources, Ark. Code Ann. §§ 11-9-519 and 11-9-527 (1987). Appellant argues that because the beneficiary of one benefit has no right to share in the benefits of the other beneficiary, the employer cannot take credit for its payments to one beneficiary in calculating its maximum liability to the other. Appellant contends that other provisions of the Workers' Compensation Law support this interpretation. We disagree and affirm the decision of the Commission.

This court, when construing statutes with no indication of a different legislative intent, gives words their ordinary and usually accepted meaning in common language; however, the ordinary and generally accepted meaning must yield to the meaning intended by the General Assembly when it is clear from the act in its entirety that a different meaning is intended. *Second Injury Fund* v. *Yarbrough*, 19 Ark. App. 354, 721 S.W.2d 686 (1986). Furthermore, the supreme court in *Holt* v. *City of Maumelle*, 302 Ark. 51, 786 S.W.2d 581 (1990), held that in statutory construction the basic rule to which all other interpretative guides are really subordinate is to give effect to the intent of the legislature.

As there is some ambiguity in the statute, the court is required to determine what the legislature intended when it

drafted the statute. Prior to the adoption of Initiated Act 1 in 1968, amending the Workers' Compensation Law, Ark. Stat. Ann. § 81-1310 limited the total disability benefits payable to $12,000 and total death benefits to $12,500. The 1968 Act eliminated the maximum benefits payable for total permanent disability and death. Act 221 of 1973, brought Ark. Stat. Ann. § 81-1310(c)(2) into the code, and its purpose was clearly to create a maximum weekly benefit for which the employer or his insurance carrier would be liable. The Act does not limit the maximum benefits payable for total permanent disability or death but fixes the maximum for which the employer or his carrier is liable. The Act also creates and provides for the funding of the Death and Permanent Total Disability Bank Fund which is made responsible for payment of benefits in excess of the maximum to be paid by the employer or his carrier. In § 81-1310(c)(2), after referring to both death benefits and permanent total disability benefits, the following language appears:

> [A]ll such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable from the Death and Permanent Total Disability Bank Fund.

We believe this language makes it clear that the intent of the legislature in passing Act 221 of 1973, was to place an overall limit on the weekly benefits payable by the employer or his carrier to $50,000, whether the benefits were for death or permanent total disability or both. The opinion of this court in *Hill* v. *CGR Medical Corporation*, 9 Ark. App. 334, 660 S.W.2d 171 (1983) in touching upon the issue here appears to support this view in saying:

> We agree with the Commission that a fair reading of the statute requires that the first $50,000 be paid in weekly benefits by the employer or his carrier and received by the employee or the dependents of an employee before the liability of the Death and Permanent Total Disability Bank Fund arises. . . .

The phrase "for permanent total disability or death benefits" upon which appellant bases his argument merely describes the types of weekly benefits to which the maximum liability of the employer or his insurance carrier applies.

Affirmed.

MAYFIELD AND CRACRAFT, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. This case involves the interpretation of Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976), which reads as follows:

> The first Fifty Thousand Dollars ($50,000) of weekly benefits for death *or* permanent total disability shall be paid by the employer *or* his insurance carrier in the manner provided in this Act. [§§ 81-1301 — 81-1349]. An employee *or* dependent of an employee who receives a total of Fifty Thousand Dollars ($50,000) in weekly benefits shall be eligible to continue to draw benefits at the rates prescribed in this Act but all such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable from the Death and Permanent Total Disability Bank Fund. [Emphasis added.]

Mr. Coy Hutson received an injury to his hip in July of 1977. After his healing period ended, he began receiving permanent total disability payments which continued for about two years at which time he died from complications of hip replacement surgery. His widow then began receiving death benefits. The issue before us is whether the Commission erred in allowing the appellee to credit the disability payments to Mr. Hutson on its obligation to pay death benefits to Mrs. Hutson thereby allowing it to combine the disability and death benefits in computing its $50,000.00 maximum liability under the above statute.

In affirming the Commission's decision, this court's majority opinion, in my judgment, has failed to carefully consider what the law passed by the legislature provides and what the appellate courts of this state have held in previous cases involving similar questions. This failure has caused the majority to find a "clear" legislative intent with which I cannot agree.

In the first place, this court held in *Sparks Regional Medical Center* v. *Death and Permanent Total Disability Bank Fund*, 22 Ark. App. 204, 737 S.W.2d 463 (1987), that the above statute does not allow an employer to credit its *temporary* total disability payments against its statutory limit of $50,000.00 for *permanent* total disability. The employer argued the statute was ambiguous

and its interpretation should prevail, but we did not agree.

Our decision in *Sparks* was in harmony with our decision in *Hill* v. *CGR Medical Corp.*, 9 Ark. App. 334, 660 S.W.2d 171 (1983), where it was held that the Bank Fund did not have to make payments to the dependents of a deceased worker until the dependents had received the $50,000.00 provided in the statute even though an amount in excess of $50,000.00 had been recovered in the settlement of a tort suit and the employer's liability for future death benefits had been settled by the employer's waiver of its subrogation rights. We held that because the settlement proceeds were invested and would be paid to the dependents in installments, the Bank Fund's liability to pay would not start until the dependents had actually received a total of $50,000.00. Our decision in *Hill* was affirmed by the Arkansas Supreme Court. *See* 282 Ark. 35, 665 S.W.2d 274 (1984).

And again, in *J.A. Riggs Tractor Co.* v. *Etzkorn*, 30 Ark. App. 200, 785 S.W.2d 51 (1990), we rejected an employer's attempt to get credit on its maximum liability for permanent total disability in the amount paid for temporary total disability. The main argument was that we should reverse our decision in *Sparks, supra.* Although *Sparks* and *Riggs* were neither en banc decisions, the two opinions were approved by five of the six regular judges of this court. It is generally thought that an organized society should have some degree of predictability in the law by which it is governed and that the doctrine of stare decisis tends to aid that predictability.

In addition, it seems to me that a careful consideration of the statute itself would indicate the opposite result from that reached by the majority opinion. Looking at the statute as set out above, it very clearly contains the word "or" three times. The very first definition of that word in *Webster's New Collegiate Dictionary* (1979) is "used as a function word to indicate an alternative," and examples of the word's usage are given as "coffee or tea," and "sink or swim." It is hard for me to believe that any member of the Arkansas General Assembly, when hearing the words "coffee or tea," would think the inquiry was "do you want both coffee and tea."

The statute set out above reads: "The first Fifty Thousand Dollars ($50,000) of weekly benefits for death *or* permanent total

disability. . . ." Surely the General Assembly did not use the word "or" to mean "and." If that was its intent, how about the next phrase "shall be paid by the employer *or* his insurance carrier. . . ." Does the word "or" in this phrase mean "and"? Do we really think the General Assembly means *both* the employer *and* his insurance carrier shall pay the first $50,000.00? And in the second sentence of the statute we find, "An employee *or* dependent of an employee who receives. . . ." Does this "or" mean "and" also? I suggest it means just what it says "an employee *or* dependent of an employee who receives. . . ." Thus, by reading the word "or" as it is written, in the dictionary meaning of the word, each time it is used in the above statute we give the word a reasonable and consistent meaning. To substitute "and" for "or" in any place in the statute results in absurd and inconsistent meanings and causes the statute to operate out of harmony with the previous decisions of the Arkansas Supreme Court and Court of Appeals.

There are other factors which suggest that the interpretation given by the majority opinion to the statute under consideration is in error. For example, Ark. Stat. Ann. § 81-1313(a) (Repl. 1976) authorizes an award for permanent total disability, and death benefits for dependents are authorized by Ark. Stat. Ann. § 81-1315 (Repl. 1976). These are entirely different sections and were different sections when Initiated Act No. 4 of 1948 was enacted. (That is the basic act still in effect. The sections of that act referred to above were sections 13 and 15.) The point I am attempting to make is that the original act clearly indicates that awards to an injured claimant are entirely separate from any benefits that may be awarded to a surviving dependent. In fact, Ark. Stat. Ann. § 81-1310(b) (Repl. 1976) specifically provides that "Compensation payable to the dependent of a deceased employee as above provided shall be in addition to funeral allowance and those benefits which were paid or to which the injured employee was entitled in his lifetime. . . ." Also, Ark. Stat. Ann. § 81-1321 (Repl. 1976) provides that "Money compensation to dependents of a deceased employee shall not constitute assets of the estate of the deceased employee and shall be payable to and for the benefit of the dependents alone."

Surely it is incongruous to have an act which provides for disability for injured workers in one section of the act and for

benefits to the dependent survivors of that employee in another section and which provides that compensation payable to the dependent of a deceased employee is *in addition* to the disability benefits paid to the injured employee and that the compensation paid to a dependent is for the benefit of the dependent *alone*, and to hold that the act also provides that disability payments may be credited against the liability for benefits due a dependent so that these separate payments can be added together to reach the employer's $50,000.00 maximum liability.

For the reasons discussed above, I respectfully dissent.

CRACRAFT, J., joins in this dissent.