DEATH AND PERMANENT TOTAL DISABILITY
FUND
*v.* TYSON FOODS, INC.

CA 90-37                                          798 S.W.2d 120

Court of Appeals of Arkansas
En Banc
Opinion delivered October 31, 1990

*David L. Pake*, for appellant.

*Bassett Law Firm*, by: *W.W. Bassett, Jr.*, and *Angela M. Doss*, for appellee.

JUDITH ROGERS, Judge. The appellant, Death and Permanent Total Disability Trust Fund, appeals from an adverse decision of the Workers' Compensation Commission, which held that the appellee, Tyson Foods, Inc., may, in calculating its statutory maximum liability of $50,000, receive credit for the lump sum payment made to the surviving spouses upon remarriage. The sole issue on appeal is whether as a matter of law the Commission erred in its finding. We find no error and affirm.

The facts in this case are undisputed. Dwight Robbins and Ronnie Dees died as a result of injuries they sustained in a motor vehicle accident which occurred during the course and scope of their employment. Their cases were consolidated since both claims arose from substantially the same factual background and each presented the same issue of law. The appellee paid all appropriate compensation benefits to the deceaseds' surviving spouses. On December 8, 1980, and July 14, 1982, the surviving spouses remarried. As a result of these subsequent marriages, the appellee paid each of the surviving spouses a lump sum equal to 104 weeks of compensation. Mr. Robbins had two minor children, and upon payment of the lump sum to his widow, the appellee began paying the minor children increased weekly benefits. The appellee filed this claim contending that it had paid the dependents in each case the total sum of $50,000, and that any additional benefits were the appellant's responsibility. The appel-

lant contended below, and now on appeal, that the lump sum payments to the surviving spouses could not be credited against the employer's maximum liability of $50,000. We disagree.

Arkansas Statutes Annotated § 81-1310(c)(2) (Repl. 1976), now codified at Ark. Code Ann. § 11-9-502 (1987), is one of the applicable statutes in question as the date of death was August 27, 1979. This statute provides, in pertinent part, as follows:

> The first Fifty Thousand Dollars ($50,000) of weekly benefits for death or permanent total disability shall be paid by the employer or his insurance carrier in the manner provided in this Act [§§ 81-1301-81-1349]. An employee or dependent of an employee who receives a total of Fifty Thousand Dollars ($50,000) in weekly benefits shall be eligible to continue to draw benefits at the rates prescribed in this Act but all such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable from the Death and Permanent Total Disability Bank Fund.

The other statutory provision relevant to a determination of this case is found at Ark. Stat. Ann. § 81-1315(d) (Repl. 1976), now codified at Ark. Code Ann. § 11-9-527 (1987), which states:

> In the event the widow remarries before full and complete payment to her of the benefits provided in Subsection (c), there shall be paid to her a lump sum equal to compensation for one hundred four (104) weeks, subject to the limitation set out in Section 10 [§ 81-1310] of this Act.

These statutes were the result of Initiated Act 4 of 1948 and Act 221 of 1973. The universal policy of courts is to construe compensation measures in a manner reasonably calculated to effectuate the legislative intent (*or, as in the case of an initiated amendment*, to carry out the presumptive intention of those who framed the measure and the people who adopted it) (emphasis ours). *See, Docker* v. *Thomas*, 229 Ark. 984, 320 S.W.2d 257 (1959); *Lion Oil Co.* v. *Reeves*, 221 Ark. 7, 254 S.W.2d 450 (1952).[1] In interpreting statutes we look to the

---

[1] For cases applying this standard in a legislative context, *see: Death and Permanent Total Disability Trust Fund* v. *Hempstead County and Public Employee Claims*

language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, contemporaneous legislative history or other appropriate matters that throw light on the matter. *See, Hanford Produce Co.* v. *Clemons,* 242 Ark. 240, 412 S.W.2d 828 (1976).

Here, the Commission concluded that the lump sum payments made to the surviving spouses upon remarriage were death benefits, and as such, the employer should be given credit for death benefits paid. The Commission, recognizing the importance of the purpose behind the statutory maximum amount, stated:

> The legislature enacted the monetary limitation in order to set a sum certain on the amount of death and total disability benefits paid by an employer. Once that limit is reached additional payments are to be made by the Bank Fund. The entire purpose of the statutory maximum would be circumvented if this Commission were to interpret the statute to mean that the employer was not entitled to credit for the lump sum death benefits paid to a surviving spouse upon remarriage . . . There is simply no logical basis for a distinction between those benefits paid a surviving spouse following an employee's death and those benefits paid in a lump sum simply because the surviving spouse chooses to remarry . . . Since the legislature obviously intended to impose a maximum limit upon death and total disability benefits paid by a particular employer, it would be contrary to that legislative intent to prohibit the employer from receiving credit for lump sum payments made to the surviving spouses upon remarriage. Thus, in order to effectuate the purpose of the statute as passed by the General Assembly, we find that an employer is entitled to receive credit for the lump sum payment made to a surviving spouse upon remarriage.

On October 3, 1990, a majority of this court in *Death and Permanent Total Disability Trust Fund* v. *Hempstead County*

---

*Division,* 32 Ark. App. 36, 796 S.W.2d 351 (1990); *Holt* v. *City of Maumelle,* 302 Ark. 51, 786 S.W.2d 851 (1990); *Williams* v. *City of Pine Bluff,* 284 Ark. 551, 683 S.W.2d 923 (1985).

*and Public Employee Claims Division*, 32 Ark. App. 36, 796 S.W.2d 351 (1990), affirmed the Commission's decision which held that it was proper to allow the employer to credit the payment of permanent total disability and death benefits towards its maximum liability of $50,000. In that case, we considered the legislative intent behind Ark. Stat. Ann § 81-1310(c)(2) (Repl. 1976), in holding that the legislature's purpose was to place an overall limit on the weekly benefits paid by the employer or his carrier. In the instant case, the Commission recognized that it was applying the legislative intent behind two statutes, Ark. Stat. Ann. §§ 81-1310(c)(2) (Repl. 1976) and 81-1315(d) (Repl. 1976), as opposed to the one statute, Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976), considered in *Hempstead County*, *supra*. The Commission noted that the entire purpose of the statutory maximum would be circumvented if the statutes were interpreted to mean that the employer was not entitled to credit the lump sum death benefit paid to a spouse upon remarriage. We agree.

The appellant places great reliance upon *Ashby* v. *Arkansas Vinegar Co. and Am. Mfg. Mut. Ins. Co.*, 22 Ark. App. 167, 737 S.W.2d 177 (1987), affirmed at 294 Ark. 412, 743 S.W.2d 798 (1988), in arguing that an employer is not entitled to receive credit for a widow's lump sum payment against its statutory liability. In *Ashby*, neither this court nor the supreme court addressed the issue of whether an employer should be given credit for the widow's lump sum payment for the purpose of calculating its maximum liability. The question in *Ashby* centered upon the *timing* of the payment of benefits to minor dependents once the widow has received the lump sum payment. Here, the issue under consideration is the *apportionment* of the payment of benefits between two sources and the liability of each.[2]

Since the legislature imposed a maximum limit upon death and total disability benefits paid by an employer, it would be contrary to its underlying intent to prohibit the employer from

---

[2] We note that subsection (c)(2) which addresses the employer's $50,000 liability was not discussed or considered by the *Ashby* court. Although the dissent quotes extensively from this court's opinion in *Ashby*, we point out that our supreme court decided *Ashby* without resorting to that rationale. The quoted passage cited by the dissent appears to be *dicta* and, therefore, is not dispositive of the issue under consideration.

receiving a credit for the lump sum payment made to a surviving spouse upon remarriage. As the Commission stated, "there is simply no logical basis for a distinction between those benefits paid a surviving spouse following an employee's death and those benefits paid in a lump sum simply because the surviving spouse chooses to remarry."

■ After a careful consideration of the record in this case, we affirm the decision of the Commission in holding, as a matter of law, that the employer is entitled to credit toward its maximum statutory liability, the lump sum payment made to the surviving spouses upon their remarriage.

Affirmed.

MAYFIELD, J., concurs.

WRIGHT, Acting C.J., COOPER and CRACRAFT, JJ., dissent.

MELVIN MAYFIELD, Judge, concurring. I concur with the result reached in the majority opinion, but the reasoning in that opinion, considered with the reasoning in the two dissenting opinions in this case, compels me to suggest the need for a consistent rationale in our approach to the liability of the Death and Permanent Total Disability Trust Fund (sometimes referred to as the "Bank" Fund).

I start with the fact that this appeal grows out of the death of Dwight Robbins who died on August 27, 1979, as the result of injuries sustained in a motor vehicle accident which occurred in the course and scope of his employment with Tyson Foods, Inc. The employer accepted the death as compensable and paid the appropriate medical and funeral expenses in accordance with the Arkansas Workers' Compensation Law. Mr. Robbins was survived by a widow and two minor children. Tyson paid death benefits to these survivors until approximately December 8, 1980, at which time the widow remarried. She was then paid a lump sum equal to 104 weeks of compensation; thereafter, maximum weekly benefits were paid for the benefit of the two children. When the total payments to the widow and children reached $50,000.00, Tyson requested that the appellant Fund assume liability for the payments to the minor children. The Fund's refusal resulted in the presentation of this matter to the Commission.

As the law judge noted in his opinion, the law in effect on the date of Mr. Robbins' fatal injuries, August 27, 1979, is controlling in this case. We are primarily concerned with two sections of the Worker's Compensation Law. Because the Arkansas Code Annotated (1987) does not set out all of the pertinent statutory provisions that were in force on August 27, 1979, the applicable provisions of the Arkansas Statutes Annotated will be cited in this discussion.

On August 27, 1979, Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976) provided as follows:

> The first Fifty Thousand Dollars ($50,000) of weekly benefits for death or permanent total disability shall be paid by the employer or his insurance carrier in the manner provided in this Act [§§ 81-1301—81-1349]. An employee or dependent of an employee who receives a total of Fifty Thousand Dollars ($50,000) in weekly benefits shall be eligible to continue to draw benefits at the rates prescribed in this Act but all such benefits in excess of Fifty Thousand Dollars ($50,000) shall be payable from the Death and Permanent Total Disability Bank Fund.

Also, on August 27, 1979, Ark. Stat. Ann. § 81-1315(d) (Repl. 1976) provided as follows:

> In the event the widow remarries before full and complete payment to her of the benefits provided in Subsection (c), there shall be paid to her a lump sum equal to compensation for one hundred and four (104) weeks, subject to the limitation set out in Section 10 [§ 81-1310] of this Act.

The full Commission held that Tyson is entitled to take credit for the lump sum payment made to Robbins' widow in calculating its statutory maximum liability of $50,000.00. Before discussing the basis of my agreement with the result of this court's majority opinion affirming the full Commission's decision, I want to look at the reasoning of Judge Wright's dissenting opinion.

That dissent points out that the widow's lump-sum payment upon remarriage was part of Initiated Act No. 4 of 1948. At that time the payment was equal to compensation for 52 weeks. *See*

Ark. Stat. Ann. § 81-1315(d) (1960). Initiated Act 4 of 1948 reenacted and amended the original Workmen's Compensation Law which was passed by the General Assembly in 1939 as Act 319. The passage of the original act was authorized by Amendment 26 to the Arkansas Constitution adopted at the general election held November 8, 1938. *Young v. G. L. Tarlton Contractor, Inc.,* 204 Ark. 283, 162 S.W.2d 477 (1942). *See also* the Compiler's Note to Ark. Stat. Ann. § 81-1301 (Repl. 1960). This 1960 replacement volume of Arkansas Statutes Annotated gives us a good picture of the workers' compensation act as adopted in 1948 and allows us to see how subsequent amendments fit into the 1948 act. Therefore, looking at Ark. Stat. Ann. § 81-1310 (Repl. 1960), we see that section 10 of the 1948 act was divided into two parts: "(a) Disability" and "(b) Death." Under (a) it was provided that compensation to an injured employee for disability would "in no case" exceed $12,500.00 in addition to the benefits allowed under section 11 (§ 81-1311) which provided for medical and hospital bills. Under (b) it was also provided that compensation "payable to the dependents for the death of an employee" would "in no case" exceed $12,500.00. (The information provided by the compiler, following the text of Ark. Stat. Ann. § 81-1310 (Repl. 1960) shows that the $12,500.00 in both paragraphs (a) and (b) came from Initiated Act No. 1 of 1956 which increased the former $8,000.00 limit.)

Initiated Act No. 1 of 1968 eliminated the maximum benefit provision for both permanent total disability and death benefits. The 1968 act accomplished this by raising the maximum benefits for the disability payments provided under paragraph (a) and for the death benefits under paragraph (b) to $19,500.00; however, the 1968 act also added paragraph (c) which provided that the $19,500.00 maximum would not apply in cases of permanent total disability or death. *See* Ark. Stat. Ann. § 81-1310(c) (Supp. 1969). Later, a limitation on the total amount of those benefits was made by Act 221 of 1973. That act amended Ark. Stat. Ann. § 81-1310(c) by adding to the provisions of paragraph (c) a new provision which stated that the first $50,000.00 of weekly benefits for death or permanent total disability "shall be paid by the employer or his insurance carrier" and that all such benefits in excess thereof shall be paid by the Death and Permanent Total Disability Fund. *See* Ark. Stat. Ann. § 81-1310(c)(2) (Repl.

1976). This is one of the two provisions of the Worker's Compensation Law which were quoted above and identified as the two sections of the law in force on August 27, 1979, with which this case is concerned.

Against the background set out above, the Commission stated in its opinion that "the entire purpose of the statutory maximum [for death or permanent total disability] would be circumvented if this Commission were to interpret the statute to mean that the employer was not entitled to credit for the lump sum death benefits paid to a surviving spouse upon remarriage." Against the same background, Judge Wright's dissenting opinion reaches a different result by stating that since the widow's lump-sum benefit provision was part of Initiated Act No. 4 of 1948, but was not mentioned when the employer's maximum liability for death or permanent total disability benefits was limited by Act 221 of 1973, it must be assumed that the 1973 act was not intended to affect the widow's lump-sum provision. At first blush, both views appear reasonable, but upon closer examination, taking the entire picture into consideration, I think the result reached by the majority opinion is correct.

Neither the majority nor the dissenting opinions of this court are in disagreement with the Commission's opinion as to the purpose of the provision limiting the maximum payment by the employer for death or permanent total disability. Judge Wright's dissent, however, looks at paragraph (c)(2) of section 10 (Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976)), and states that it limits the employer's liability "only" as to weekly benefits. That dissent then states, in the last paragraph, that the widow's lump-sum payment is not a weekly benefit, citing *Ashby* v. *Arkansas Vinegar Co.,* 22 Ark. App. 167, 737 S.W.2d 177 (1987), as authority.

In the first place, I think the dissent stopped short when it concluded that Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976) "places a maximum amount of 'weekly benefits' for death and permanent total disability for which an employer or his insurance carrier is liable." What actually happened, as a matter of historical fact, is that Act 221 of 1973 amended paragraph (c) of section 10 of the worker's compensation act by breaking it into two subdivisions: (1) which provided the total compensation

prescribed in subsection (a) of section 10 shall not apply in cases of permanent total disability or death, and (2) which provided for a $50,000.00 maximum to be paid by the employer or his carrier for death or permanent total disability benefits. However, as pointed out above, long before paragraph (c) was added to section 10 by Initiated Act No. 1 of 1968, section 10 had only two paragraphs: (a) which contained a provision limiting the *total amount* to be paid for disability benefits, and (b) which contained a provision limiting the *total amount* to be paid for death benefits. Then, when Initiated Act 1 of 1968 eliminated the total amount to be paid for *permanent total* disability or death benefits, Act 221 of 1973 was enacted which placed a limit upon the *total amount* for which the employer or his carrier would be liable for (1) *permanent total* disability or (2) death benefits. Thus, Judge Wright's dissent in stating that Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976) limits liability for "the maximum amount of 'weekly benefits' for total and permanent total disability" fails to discuss the *purpose* of the limitation which is to limit the maximum amount to be paid by the employer for those named benefits. The term "weekly benefits" describes the *amount* and *manner* in which the designated benefits are to be paid, but the issue presented in this case requires us to determine the *purpose* for limiting the employer's liability as to the total amount of those weekly benefits.

In the second place, I think the reliance by both dissenting opinions upon *Ashby, supra,* is misplaced. As the majority opinion points out, *Ashby* did not address the issue of whether an employer should be given credit for the widow's lump-sum payment for the purpose of calculating its maximum liability. In regard to weekly benefits, our *Ashby* opinion held:

> Upon remarriage, those payments terminate, and upon termination of those payments the minor beneficiaries' increased benefits should become due and payable immediately.

22 Ark. App. at 170. The Arkansas Supreme Court affirmed our decision in *Ashby, see Arkansas Vinegar Co.* v. *Ashby,* 294 Ark. 412, 743 S.W.2d 798 (1988), using a different rationale. However, under the reasoning of either court, the *Ashby* decision does not negate the rationale of the majority opinion in this case which

in essence holds that the widow's lump-sum payment is a death benefit for which the employer should be given credit for the purpose of calculating its maximum liability under Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976).

Thus, I concur with the result reached by the majority opinion. I do not agree, however, with the majority opinion insofar as it indicates approval of the opinion in *Death & Permanent Total Disability Trust Fund* v. *Hempstead County*, 32 Ark. App. 36, 796 S.W.2d 351 (1990), which stated:

> We believe this language makes it clear that the intent of the legislature in passing Act 221 of 1973, was to place an overall limit on the weekly benefits payable by the employer or his carrier to $50,000, whether the benefits were for death or permanent total disability or both.

*See* 32 Ark. App. at 39. As I have tried to explain in this opinion, the purpose of Act 221 of 1973 was to limit the employer's maximum liability in two different situations: (1) as to the *total amount* of the weekly payments for permanent total disability, and (2) as to the *total amount* of the weekly payments for death, but I find nothing to indicate that the legislature intended to allow the employer to add together the amounts paid on both the permanent total disability and the death benefits in calculating his maximum amount of liability. Moreover, as explained in my dissent in the *Hempstead County* Case, I believe the language in Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976), clearly shows that the majority opinion in that case reached the wrong result.

I concur in affirming the decision of the Commission.

ERNIE E. WRIGHT, Acting Chief Judge, dissenting. I believe the prevailing opinion incorrectly applies Ark. Stat. Ann. § 81-1310(c)(2) (Repl. 1976). The statute, set out in the prevailing opinion, places a maximum amount of "weekly benefits" for death and permanent total disability for which an employer or his insurance carrier is liable but makes no provision for the inclusion of any other benefits in computing the maximum amount for which the employer or his carrier is liable.

We point out the widow's lump sum benefit upon remarriage was part of the 1948 Initiated Act establishing the Workers' Compensation Law. The section of the statute fixing the maxi-

mum employer liability for such weekly benefits was brought into the Workers' Compensation Law by Act 221 of 1973. It is significant that the 1973 act creating the maximum liability for the specific "weekly benefits" made no mention of the widow's lump sum benefit which was already a part of the law.

In the drafting of the 1973 act if it had been intended for the lump sum extra benefit allowed the widow upon remarriage to be included in the maximum figure for which the employer would be responsible that could have been included in the measure upon which the people voted. There is no ambiguity in the statute as to the type of benefits included in the maximum benefits for which the employer or his carrier is liable. The statute expressly includes only the "weekly" death and total permanent disability benefits. The appellate court has no authority to legislate or to construe a statute to mean other than what it says when the statute is plain and unambiguous as here. *Weston* v. *State*, 258 Ark. 707, 528 S.W.2d 412 (1975). We should not by implication read into the 1968 amendment a provision not included. *Martin* v. *Hickey*, 232 Ark. 121, 334 S.W.2d 667 (1960).

Under the Ark. Code Ann. § 11-9-527 (1987) a widow dependent upon her spouse is entitled to weekly benefits until death or remarriage. Upon her remarriage the weekly benefits terminate. Subsection (d) provides a special lump sum benefit for a widow upon remarriage and the amount is equal to 104 weeks of the compensation to which she was entitled before marriage. The lump sum is not a weekly benefit. In *Ashby* v. *Arkansas Vinegar Co.*, 22 Ark. App. 167, 737 S.W.2d 177 (1987), this court said:

> The act clearly provides that the widow is to be paid weekly benefits until her remarriage. Worthy of note is the fact that the legislature did not state, as it easily could have, that upon remarriage a widow is to receive 104 weeks of compensation in a lump sum. Instead, the act provides that she is to receive a sum "equal to" 104 times the weekly benefits she had been receiving. There is nothing to indicate an intention that this payment be anything other than an additional benefit to compensate the widow for the loss of future weekly benefits occasioned by her remarriage, and we conclude that the reference to 104 weeks contained in § 81-1315(d) was merely intended to serve as

a basis by which to determine the amount of the sum to be paid to her.

The case should be reversed and remanded.

COOPER, J., joins in this dissent.

GEORGE K. CRACRAFT, Judge, dissenting. My point of departure with the prevailing opinion is its effort to resolve the issue by seeking to determine legislative intent in the enactment, and its strained effort to distinguish the supreme court's decision in *Arkansas Vinegar Co.* v. *Ashby*, 294 Ark. 412, 743 S.W.2d 798 (1988).

In my opinion, the language in Ark. Stat. Ann. § 81-1310(c)(2) (1976), then in effect, is as clear and unambiguous as the legislators possibly could have made it, and the words need only to be given their ordinary meaning. It provides in clear and unequivocal language that the first $50,000.00 of "weekly benefits" for death or permanent total disability shall be paid by the carrier, and the employee who receives $50,000.00 in "weekly benefits" shall be eligible for continued benefits from the Death and Permanent Total Disability Trust Fund. It does not provide for the shift in liability to occur when the employer has paid $50,000.00 in "death benefits" or "benefits payable because of death," as the Commission and majority now read it. It used the words "weekly benefits for death."

What then are "weekly benefits for death"? In the supreme court's opinion in *Ashby, supra*, it was held that the language of the provision for lump-sum payment for widows on remarriage was so clear and unequivocal as to require no judicial interpretation:

> The statute provides that in the event the widow remarries "there shall be paid to her a lump sum equal to compensation for 104 weeks." The statute further provides that upon the cessation of compensation to any person the remaining persons are entitled to compensation at the rate "which the persons would have received if they had been the only persons entitled to compensation at the time of the decedent's death." The two sections are harmonious and the plain and ordinary meaning of the words is that the

widow will receive a final payment in a a "lump sum." There is no provision in the statute, if we are to give the words their ordinary and accepted meaning, which would lead to any conclusion except that the lump sum payment is in lieu of continuing payments to the widow. *Clearly the widow is no longer entitled to receive weekly benefits.* Therefore, upon the remarriage of the widow the remaining dependents are entitled to compensation in the amount they would have received had they been the only persons entitled to benefits upon the death of their father.

*Ashby*, 294 Ark. at 415-416, 743 S.W.2d at 799-800 (emphasis added).

The majority's attempt to distinguish *Ashby* is, in my judgment, wholly without substance. If the lump sum provision provided for widows on remarriage is not a "weekly benefit" for one purpose, in what manner and by what sound reasoning can we now say that it is a "weekly benefit" for some other purpose? If the legislature had intended that the $50,000.00 cap on employee's liability be computed on some basis other than weekly benefits, I credit it with the intelligence and ability to have said so. However, it did not, but chose to compute the $50,000.00 limit of liability on the basis of "weekly benefits for death." The lump sum payment to a widow on remarriage has been judicially declared to be something other than a weekly benefit for death. I would reverse.

COOPER, J., joins in this dissent.